CONSOLIDATED RAIL CORPORATION, Plaintiff-Appellee, *v.* LIBERTY MUTUAL INSURANCE COMPANY *et al.*, Defendants-Appellants.

Fifth District    No. 80-152

Opinion filed February 3, 1981.

Michael B. Constance and Edward J. Szewczyk, both of Belleville, for appellants.

Walker & Williams, P. C., of Belleville (David B. Stutsman and Gordon E. Maag, of counsel), for appellee.

Mr. JUSTICE HARRISON delivered the opinion of the court:

The defendant Liberty Mutual Insurance Company (Liberty) appeals from the order of the circuit court of St. Clair County declaring that plaintiff, Consolidated Rail Corporation (Con Rail), was afforded coverage under a certain liability insurance policy issued by defendant. The declaratory judgment of March 7, 1980, ordered Liberty to assume the defense of Con Rail in certain personal injury suits pending against the railroad. It also ordered Liberty to satisfy any judgments against Con Rail within the policy limits. We affirm.

The issues presented on appeal are these: (1) Whether the trial court erred in ruling that Con Rail was an insured in each of the personal injury suits; (2) whether the trial court erred in ruling that Liberty had a duty to defend Con Rail; (3) whether Liberty was estopped from asserting noncoverage by virtue of its refusal to accept tender of defense of the suits; and (4) whether the trial court erred in ruling that Liberty had a duty to indemnify Con Rail.

The record discloses that Pennsylvania Truck Lines (PTL), a wholly owned subsidiary of Con Rail, provides various services to Con Rail in its piggyback operation at railroad yards located in Fairmont City, St. Clair County, Illinois. Through a leasing agreement dated July 2, 1965, Con Rail leased to PTL a parcel of land covering approximately 8900 square feet situated within an area known as Roselake Yards at Fairmont City. According to the terms of the lease, PTL procured liability insurance from Liberty for personal injury and for property damage. Con Rail was named as an "additional insured" in appropriate provisions within the policy. The policy contains the usual clause obligating the insurer to defend its insured.

During the term of this policy, and while it was in full force and effect, 11 PTL employees filed personal injury suits against Con Rail alleging that they were injured while laboring at or in connection with the piggyback operation owned by Con Rail. As each suit was filed, Con Rail duly tendered its defense to Liberty Mutual. Liberty assumed the defense of the first two but thereafter refused the next four. Con Rail subse-

quently sued on July 12, 1979, seeking a declaration as to the coverage of those that Liberty had refused. While this action was pending, Liberty refused to defend an additional five claims. These five were then added by amendment to Con Rail's suit for declaratory judgment, bringing the total to nine.

At the March hearing, a representative for Liberty testified that Liberty did not immediately notify Con Rail of its intention to refuse tender of the suits. When Liberty did contact Con Rail, it gave no reason for its refusal. The Liberty spokesman admitted that he failed to respond to inquiries made by Con Rail's attorneys. He further stated that Liberty did not issue the customary reservation of rights, nor did it institute a declaratory judgment action of its own. These omissions led the trial court to conclude that Liberty had breached its duty under the policy, and it therefore rendered a judgment in favor of Con Rail.

■■ On appeal, Liberty asserts first that Con Rail is not an insured in each of the personal injury lawsuits filed below. The determinative provisions of the policy are serial endorsement No. 4 and serial endorsement No. 9. Both designate Consolidated Rail Corporation as an additional insured. Serial endorsement No. 4 states:

> "It is agreed that:
>> The 'Person Insured' provision is amended to include as an insured the person or organization designated below, but only with respect to his liability arising out of
>> (a) his financial control of the named insured or
>> (b) premises owned, maintained or controlled by him while said premises are leased to or occupied by the named insured."

According to endorsement No. 4, Con Rail is an insured and entitled to coverage if its liability under the nine personal injury lawsuits arises out of (a) its financial control of PTL, or (b) the premises owned by Con Rail while those premises are leased to or occupied by PTL.

Appellant focuses on part (b) of endorsement No. 4, thoroughly examining the law surrounding the insurance term "occupied by" and the various derivatives therefrom. While accurate, this examination ignores the key phrase "arising out of." We believe that the decision whether Con Rail is an insured turns on the construction of that phrase.

The words "arising out of" have been construed frequently in workmen's compensation claims and in insurance litigation to mean that a mere causal connection suffices to bring facts within the ambit of an insurance clause which is prefaced with that phrase. The court held in *Williams v. Country Mutual Insurance Co.* (1975), 28 Ill. App. 3d 274, 277, 328 N.E.2d 117, that an injury can be said to arise out of one's employment if its origin is in some way connected with the employment so that

there is a causal connection between the employment and the accidental injury. The supreme court agreed that this phrase contemplates only a causal connection between an injury and a defendant. (*Chmelik v. Vana* (1964), 31 Ill. 2d 272, 277, 201 N.E.2d 434.) The court often employs such synonyms as "connected with" or "incidental to" when defining the phrase "arising out of." (*Lynch Special Services v. Industrial Com.* (1979), 76 Ill. 2d 81, 86, 389 N.E.2d 1146.) The third circuit construed the phrase in *Aetna Casualty & Surety Co. v. Ocean Accident & Guaranty Corp.* (3d Cir. 1967), 386 F.2d 413, 415:

> "The policy language 'arising out of' is very broad and vague. It must, therefore, 'be construed strictly against the insurer and liberally in favor of the insured.' [Citation.] Construed in this manner ' "arising out of" means causally connected with, not proximately caused by. "But for" causation, i.e., a cause and result relationship, is enough to satisfy this provision of the policy.' "

With this definition in mind, we will compare the relevant policy provisions to the allegations of the complaints.

Each complaint alleges that the plaintiffs were employees of PTL and that, because PTL was controlled by Con Rail, the employees acted as subservants of Con Rail. The source of Con Rail's potential liability, therefore, "originates from" or is "incident to" its financial control over PTL. Con Rail is "connected with" PTL because of its financial control over its subsidiary. Since Con Rail's potential liability "arises out of" this financial control, we read serial endorsement No. 4(a) to include Con Rail as an insured under the policy.

Provision (b) of serial endorsement No. 4 also covers Con Rail with respect to the personal injury claims. Liberty argues that to trigger endorsement No. 4(b) the injury complained of must have occurred on the property leased by Con Rail to PTL. While this interpretation is compelling, it is much too narrow a construction to be afforded No. 4(b). As stated earlier, the endorsement covers any accident "arising out of" the property leased by Con Rail to PTL. All of the accidents occurred during the course of the piggyback operation, and the complaints so alleged. Each injury was "incident to" work related duties "connected with" the Roselake premises owned by Con Rail. The policy does not restrict coverage to incidents or accidents occurring on the leased premises, but to incidents or accidents arising out of the leased premises. We believe this causal connection alone is sufficient to invoke coverage under the policy in the instant case.

■■ Appellants caution us not to interpret endorsement No. 4 in a factual vacuum, but to "ascertain the intent of the parties by looking to the language used, the situation of the parties and the purpose for which the policy was obtained. [Citation.]" It is true that insurance contracts are

governed by the same legal principles as any other business contract. (*Bituminous Casualty Corp. v. North River Insurance Co.* (1977), 46 Ill. App. 3d 654, 656-57, 361 N.E.2d 60.) Still, the courts are bound by the following rule of construction:

> "[W]here an equivocal expression is included narrowing the range of liability, the language used will be liberally construed to effectuate indemnification." (*J. M. Corbett Co. v. Insurance Co. of North America* (1976), 43 Ill. App. 3d 624, 626-27, 357 N.E.2d 125.)

Taking a liberal view of the policy language in serial endorsements No. 4(a) and No. 4(b), we conclude that Con Rail was an insured in each of the personal injury suits filed below. Having found that coverage existed under serial endorsement No. 4, we need not address the arguments raised by the parties relating to serial endorsement No. 9.

The second point the parties ask us to consider is whether the trial court erred in ruling that Liberty had a duty to defend Con Rail in the nine personal injury suits. At the hearing from which this appeal is taken, Con Rail argued that Liberty had a duty to assume the defense of each personal injury action as it was tendered if it appeared from the face of their complaints that the alleged facts brought the case potentially within the coverage of the policy. Liberty Mutual took the position that coverage existed only for injuries occurring on the leased premises. Believing that the location of some of the accidents might preclude coverage, and doubting the propriety of certain plaintiffs' filing FELA and common law negligence claims, Liberty felt it was entitled to investigate the circumstances surrounding each of the accidents before accepting their tender.

■■ ■ The law is well settled in Illinois that an insurer is obligated to defend in those actions where the complaint alleges facts potentially within the coverage of the policy. (*Thornton v. Paul* (1978), 74 Ill. 2d 132, 144, 384 N.E.2d 335; *Maryland Casualty Co. v. Peppers* (1976), 64 Ill. 2d 187, 193-94, 355 N.E.2d 24.) In determining whether there is potential coverage, only the allegations of the complaint may be consulted. (*Simms v. Illinois National Casualty Co.* (1963), 43 Ill. App. 2d 184, 193, 193 N.E.2d 123.) Independent investigations revealing facts which conflict with those alleged in the complaint do not relieve the insurer of his duty to defend. As the court in *Thornton* declared:

> "If the complaint alleges facts within or potentially within policy coverage, the insurer is obliged to defend even if the allegations are groundless, false, or fraudulent." (74 Ill. 2d 132, 144.)

The complaints in the personal injury suits alleged facts which were potentially covered by PTL's insurance policy. They asserted Con Rail's status as lessor of the yards in which the injuries occurred and Con Rail's financial control over PTL as bases for Con Rail's liability. If Liberty suspected, from its knowledge of circumstances not apparent on the face

of the complaints, that it could legitimately refuse to defend, it should have issued a reservation of rights or filed its own suit for declaratory judgment. The initial determination that Liberty had a duty to defend, however, must be based on the allegations of the complaint. Therefore the trial court did not err in holding that Liberty had a duty to defend Con Rail.

The third argument advanced by appellant is that it is not estopped from asserting noncoverage at the hearing by virtue of its initial refusal to accept tender of the defense of the suits. Liberty conditions the imposition of estoppel upon the presence of prejudice to the insured. It maintains that Con Rail could not have been prejudiced by the actions of the insurance company because Liberty's refusal to defend occurred before any of the cases came to trial. In addition, Liberty took no legal action on behalf of Con Rail during pretrial matters. Liberty argues that estoppel works only to safeguard those who have detrimentally relied on the acts of another. Without that detriment, an insured cannot invoke the doctrine of estoppel against an insurer.

A persuasive line of cases supports appellant's position that detriment or prejudice must exist. Prejudice was a critical factor in the decision in *Gibraltar Insurance Co. v. Varkalis* (1970), 46 Ill. 2d 481, 263 N.E.2d 823. There, counsel for the insurer entered an appearance and filed other various motions on behalf of the insured, not notifying the insured for more than a year that the company intended to reserve its rights in the action. Since the insurance company's behavior harmed the position of its insured, the supreme court held that the company had waived its right to assert noncoverage. The court reaffirmed its stance in *Maryland Casualty Co. v. Peppers* (1976), 64 Ill. 2d 187, 195, 355 N.E.2d 24:

"It is generally held that an insurer may be estopped from asserting a defense of noncoverage when the insurer undertakes the defense of an action against the insured. However, it is also the general rule that the undertaking must result in some prejudice to the insured."

Likewise, in *Ladd Construction Co. v. Insurance Company of North America* (1979), 73 Ill. App. 3d 43, 49, 391 N.E.2d 568, the court concluded that estoppel could not apply unless the party claiming it had experienced some loss, injury, damage or prejudice.

■▌ Con Rail concedes that estoppel arises in situations where an insurer assumes the defense and then attempts to withdraw that defense to the detriment of the insured. However, estoppel also arises where a potential for coverage is present and the insurer refuses from the outset to defend. By wrongfully refusing to defend, the insurer has breached the terms of its own policy of insurance. As long ago as *Kinnan v. Charles B. Hurst Co.* (1925), 317 Ill. 251, 148 N.E. 12, the supreme court relied on this theory of

estoppel in insurance cases. Discussing the effect of a breach of the policy on the parties, the court held that the plaintiff there was entitled to recover from the insurance company up to the policy limits. It reasoned that, when the insurer refused to defend the original Kinnan suit against Hurst Company, it breached its contract with Hurst. At that time a cause of action for breach of contract arose in favor of Hurst against the insurer, and the liability of the insurer became fixed and certain. This reasoning controlled in *Simms v. Illinois National Casualty Co.* (1963), 43 Ill. App. 2d 184, 197, 193 N.E.2d 123. The court engaged in a thorough discussion of the rationale behind *Kinnan*, summarizing it thusly:

> "* * * what is really meant is that the insurer has no right to insist that the insured be bound by the provisions of the insurance contract inuring to its benefit, i.e., the 'Exclusions' provisions, when it has already breached the contract by violating the provisions inuring to the benefit of the insured, i.e., the defense provisions. In this sense it may properly be said to be estopped." 43 Ill. App. 2d 184, 197.

More recently, in *Thornton v. Paul* (1978), 74 Ill. 2d 132, 144-45, 384 N.E.2d 335, the supreme court applied the same logic. There the insurer refused from the outset to represent its insured, forcing the individual to retain private counsel. When the insured subsequently sued the insurance company, the court held that the insurer was estopped from raising policy defenses or noncoverage since it had, itself, breached the contract with its client.

Since *Thornton*, the court has consistently adhered to the rule that where potential coverage exists and an insurer unjustifiably refuses to defend, the insurer is contractually estopped from denying coverage. Prejudice is not a critical factor. (*Home Insurance Co. v. Lorelei Restaurant Co.* (1980), 83 Ill. App. 3d 1083, 1086, 404 N.E.2d 895; *Murphy v. Urso* (1980), 83 Ill. App. 3d 779, 789, 404 N.E.2d 287; *Reis v. Aetna Casualty & Surety Co.* (1978), 69 Ill. App. 3d 777, 783, 387 N.E.2d 700; *Associated Indemnity Co. v. Insurance Co. of North America* (1979), 68 Ill. App. 3d 807, 822, 386 N.E.2d 529.) The same estoppel rule holds true where the court has determined the issue of potential coverage by construing a "Persons Insured" clause. (*Clemmons v. Travelers Insurance Co.* (1980), 88 Ill. App. 3d 201, 206-07, 410 N.E.2d 445.) The factual situation in the case at bar clearly falls within the holding of the *Clemmons* case. We see no reason to depart from this line of precedent.

■■ Liberty draws the distinction between those cases filed before the initiation of the suit for declaratory judgment and those cases filed after the initiation. We find this distinction of little merit. An insurer has the duty to assume the defense of its insured whenever there is a potential for coverage. An insurance company who suspects that it has no duty to

defend cannot remain immobile and refuse to participate in the litigation. The Illinois courts have issued firm mandates in this regard. In *Associated Indemnity Co. v. Insurance Co. of North America* (1979), 68 Ill. App. 3d 807, 821, the court said:

"As a general rule, where there is potential coverage, but the insurer believes a valid exclusionary clause may be applicable, the insurer cannot simply abandon the insured. Rather, the insurer must defend the insured under a reservation of rights, and either: (1) secure a declaratory judgment as to the question of coverage; or (2) adjudicate the issue of coverage in a supplemental suit."

See also *Aetna Casualty & Surety Co. v. Coronet Insurance Co.* (1976), 44 Ill. App. 3d 744, 748, 358 N.E.2d 914, 917. The fact that a declaratory judgment has been filed with respect to some cases does not relieve the insurer of its obligations arising with respect to cases being filed after that date. Because a duty arises with respect to each individual suit, estoppel applies with respect to each suit as well.

Last of all, appellant contends that Con Rail failed to prove Liberty had a duty to indemnify Con Rail in the underlying tort actions. However, since we decided that Liberty is estopped from denying coverage by virtue of its unjustified refusal to defend Con Rail in those nine actions, our determination that Con Rail is entitled to indemnification must necessarily follow. This determination stands, despite the submission of a new argument in appellant's reply brief. There, appellant directed our attention for the first time to an exclusionary clause in the insurance policy, arguing that it precluded coverage. We must refuse to consider the merit of this argument, pursuant to Supreme Court Rules 341(e)(7) and 341(g). (Ill. Rev. Stat. 1979, ch. 110A, par. 341(e)(7),(g)); *People v. Warmack* (1979), 73 Ill. App. 3d 783, 793, 392 N.E.2d 334.) Even if we were to entertain appellant's argument regarding the exclusionary clause, it would not change our present position. The estoppel theory controls this situation.

The rationale of this estoppel rule is very succinctly stated by Justice Tobias Barry in the last paragraph of the body of the *Clemmons* opinion:

"We note, as did the court in *Sims*, that the result in this case is harsh. However, in cases in which an insurer believes a policy does not provide coverage, its options are clear. It may either seek a declaratory judgment as to its obligations and rights, or defend the alleged insured under a reservation of rights. (*Sims*, 43 Ill. App. 2d 184, 199, 193 N.E.2d 123, 130; *Murphy v. Urso* (1980), 83 Ill. App. 3d 779, 404 N.E.2d 287.) We realize that insurers may consider these options to be undesirable. However, had the defendant opted to either seek a determination of its rights under the policy or defend under a reservation of rights, it would not now be liable

to plaintiff in the amount of $100,000 under a policy which in all probability may not have afforded coverage under the facts." 88 Ill. App. 3d 201, 209.

In conclusion, we agree with the trial court that the insurance policy affords coverage to Con Rail and that Liberty Mutual must assume the defense of the suits, paying any judgments entered against Con Rail within the limits of the coverage.

Affirmed.

KARNS and JONES, JJ., concur.