FOURTH DIVISION

September 16, 2004

No. 1-03-2617

ZURICH INSURANCE COMPANY, ) Appeal from

) the Circuit Court

Plaintiff-Appellant, ) of Cook County.

)   

) 

v. ) No. 01 CH 21314

) 

)   

WALSH CONSTRUCTION COMPANY ) Honorable

OF ILLINOIS, INC., ) Bernetta Bush

) Judge Presiding.

Defendant-Appellee. ) 

     

JUSTICE THEIS delivered the opinion of the court:

Plaintiff, Zurich Insurance Company (Zurich), appeals from the circuit court's entry of summary judgment against it in a declaratory judgment action to determine Zurich's obligations under a commercial general liability (CGL) policy issued to defendant, Walsh Construction Company of Illinois, Inc. (Walsh).  Zurich contends that the circuit court (1) erred in finding that Walsh adequately complied with the notice conditions of the policy, thereby obligating Zurich to defend it in the underlying litigation; and (2) erred in finding that prejudice was an important factor in determining whether Walsh breached the notice conditions of the policy.  For the following reasons, we affirm the judgment of the circuit court.

BACKGROUND

The underlying litigation in this insurance dispute arises from a series of work-related accidents that allegedly occurred during a construction project (the Blue Cross Project) in which Walsh was serving as the general contractor.  Four individuals, including Brent Guptill, Toby Anzivino, Scott Vuletic, and Edward Rau, filed suit against Walsh for injuries sustained while employed by Rankin Steel Company, a subcontractor on the Blue Cross Project.  Guptill filed his action against Walsh on January 20, 1998, with respect to a February 12, 1996 accident.  Anzivino filed his action against Walsh on January 26, 1998, with respect to a February 25, 1996 accident.  Vuletic filed his action against Walsh on November 4, 1999, with respect to an April 12, 1996 accident, and Rau filed his action on April 10, 2000, with respect to an April 15, 1996 accident.

Walsh was insured for the Blue Cross Project under a “wrap-up” policy issued by Reliance Insurance Company (Reliance).  It is undisputed that the Reliance policy provided a coverage limit of $1 million per occurrence and $2 million aggregate, supplemented by a $100 million umbrella policy.  It is further undisputed that Walsh's first notice that a claim would be filed in connection with the Blue Cross Project was the filing of the respective complaints by Guptill, Anzivino, Vuletic and Rau.  Walsh timely provided notice of the four lawsuits to Reliance and Reliance assumed its duty to defend under the terms of its policy.  

In addition to the insurance provided by Reliance, Zurich issued a CGL policy to Walsh which provided a coverage limit of $1 million per occurrence and $2 million aggregate, subject to a $50,000-per-occurrence deductible.  The parties appended several endorsements to the policy.  Endorsement 23 provides in pertinent part as follows:

"It is agreed that this policy is hereby amended as indicated.  All other terms and conditions of this policy remain unchanged.

* * *

INSURED'S INTEREST IN A WRAP-UP OR JOINT VENTURE ENDORSEMENT

It is understood and agreed that this policy is amended to include coverage for the Named Insured, as their interest may appear, in any Wrap-Up or Joint Venture.  This insurance is excess of[,] and non-contributing to[,] any other valid and collectible insurance."

Thus, pursuant to the terms of the endorsement, the parties agree that the coverage provided by Zurich was rendered excess to the coverage provided by Reliance with respect to the Blue Cross Project.  

The Zurich policy also contains the following relevant conditions:

 "3. Insured's Duties in the Event of Occurrence, Claim or Suit.

(a) In the event the named insured, or any insured under this policy, learns or is put on notice of any occurrence that might reasonably give rise to a claim or potential claim, alone or in combination with other claims or potential claims, and in the event of a claim or suit brought against the named insured, written notice * * * shall be given by or for the named insured * * * within fifteen (15) days or as soon as is reasonably practicable thereafter.

(b) If a claim or suit is brought against the named insured, the named insured shall immediately forward to the company every demand, notice, summons or other process received by him or his representative.

* * *

(d) The company may deny coverage with respect to each occurrence for which the named insured does not give the company notice in strict compliance with the foregoing notice requirements."

Additionally, endorsement 7 provides in pertinent part that "[i]n the event of an occurrence, written notice * * * shall be given * * * as soon as practical after notice has been received by the Insured."

Subsequently, during the pendency of the underlying litigation, on October 3, 2001, the Commonwealth Court of Pennsylvania entered an order of liquidation for Reliance, rendering it insolvent.  Twelve days later, on October 15, 2001, Walsh notified Zurich of the pending lawsuits, provided Zurich with copies of the complaints, and requested that Zurich defend and indemnify it under the terms of its policy.  Zurich undertook the defense of Walsh in the underlying lawsuits pursuant to a reservation of its rights under the policy.

Thereafter, Zurich filed a declaratory judgment action seeking a determination that Walsh breached the notice conditions of the Zurich policy by failing to provide timely notice of the accidents and four lawsuits, thereby relieving Zurich of its duty to defend Walsh in connection with the underlying litigation.  Walsh filed an answer and a counterclaim, seeking a determination that the policy did not require notice of a claim until Walsh reasonably believed that the excess coverage was reasonably likely to be implicated.  Subsequently, the trial court denied Zurich's motion to dismiss the counterclaim and the parties filed cross-motions for summary judgment pursuant to section 2-1005 of the Illinois Code of Civil Procedure (the Code) (735 ILCS 5/2-1005 (West 2002)).  After a hearing on the motions, the trial court granted Walsh's motion for summary judgment, and entered a judgment against Zurich.  Zurich timely filed its notice of appeal.

ANALYSIS

Zurich contends that the trial court erred in granting summary judgment in favor of Walsh and against Zurich where Walsh breached the notice conditions of the policy, relieving Zurich of its duty to defend.  
Summary judgment is proper where "the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  735 ILCS 5/2-1005(c) (West 2000); 
Robidoux v. Oliphant
,
 201 Ill. 2d 324, 335, 775 N.E.2d 987, 994 (2002).  We review the grant of 
summary judgment 
de novo.  
Guillen v. Potomac Insurance Co. of Illinois
,
 203 Ill. 2d 141, 149, 785 N.E.2d 1, 6 (2003).  

In the present case, the parties filed cross-motions for summary judgment and do not dispute the essential facts.  Rather, the dispute revolves around the interpretation of the Zurich insurance policy.  The construction of the provisions 
of an insurance policy is a question of law, subject to 
de novo
 review.  
American States Insurance Co. v. Koloms
,
 177 Ill. 2d 473, 479-80, 687 N.E.2d 72, 75 (1997).  
In construing the language of the policy, the court's primary objective is to ascertain and give effect to the intent of the parties to the contract.  
Koloms
,
 177 Ill. 2d at 479, 687 N.E.2d at 75.  
In order to ascertain the meaning of the policy's language and the parties' intent, the court must construe the policy as a whole and "take into account the type of insurance purchased, the nature of the risks involved, and the overall purpose of the contract." 
 Koloms
,
 177 Ill. 2d at 479, 687 N.E.2d at 75.  The conditions inserted into insurance policies are to be construed most favorably to the insured.   
U.S. Fidelity & Guaranty Co. v. Wilkin Insulation Co.
, 144 Ill. 2d 64, 74, 578 N.E.2d 926, 930 (1991); 
Hartford Accident & Indemnity Co. v. Rush-Presbyterian-St. Luke's Medical Center
, 231 Ill. App. 3d 143, 149, 595 N.E.2d 1311, 1315 (1992).  

Applying these broad principles to the present case, we consider whether Walsh adequately complied with the notice provisions in the Zurich policy.  Generally, the notice provisions in a policy are intended to ensure that the insurer will be able to timely investigate and defend claims against its insured.  See 
American Country Insurance Co. v. Efficient Construction Corp.
, 225 Ill. App. 3d 177, 181, 587 N.E.2d 1073, 1075 (1992).  The notice provisions are not merely technical requirements but, rather, conditions precedent to the triggering of the insurer's contractual duties.  
Northbrook Property & Casualty Insurance Co. v. Applied Systems, Inc.
, 313 Ill. App. 3d 457, 464, 729 N.E.2d 915, 920-21 (2000); 
American Mutual Liability Insurance Co. v. Beatrice Co.
, 924 F. Supp. 861, 874 (N.D. Ill. 1996).  Thus, when the insured fails to comply with these provisions, the insurer may be relieved from its duty to defend and indemnify the insured under the policy.  
Montgomery Ward & Co. v. Home Insurance Co.
, 324 Ill. App. 3d 441, 449, 753 N.E.2d 999, 1005 (2001); 
Applied Systems, Inc.
, 
313 Ill. App. 3d at 464, 729 N.E.2d at 921.

Zurich argues that Walsh breached the notice conditions in the policy where notice of the accidents was not provided until almost 5 ½ years after the first alleged injury and notice of the lawsuits was not provided until 3 ½  years after the first lawsuit was filed.  A lengthy passage of time is not an absolute bar to coverage provided that the insured has a justifiable excuse for the delay.  
Applied Systems, Inc.
, 313 Ill. App. 3d at 465, 729 N.E.2d at 921.  Rather than focusing on the mere passage of time, Illinois courts have traditionally considered several factors in assessing the validity of an insured's excuse, including (1) the language of the policy's notice provisions; (2) the degree of the insured's sophistication in the world of commerce and insurance; (3) the insured's awareness that an occurrence or suit as defined by the policy has taken place; and (4) the insured's diligence and reasonable care in ascertaining whether policy coverage is available.  
Applied Systems, Inc.
, 313 Ill. App. 3d at 466, 729 N.E.2d at 922;
 
Tribune Co. v. Allstate Insurance Co.
, 306 Ill. App. 3d 779, 789-90, 715 N.E.2d 263, 271 (1999)
.       

We begin our analysis by examining the notice requirements of the Zurich policy and applicable endorsements.  While we recognize that endorsements supersede conflicting policy provisions (
Tribune
, 306 Ill. App 3d at 784, 715 N.E.2d at 268), both the policy and Endorsement 7 require the insured to notify Zurich of an occurrence or a suit "as soon as practicable."
(footnote: 1)  In construing the "as soon as practicable" language, Illinois courts have held in the notice-of-occurrence and notice-of-suit contexts that this phrase requires notification within a reasonable time, considering all the relevant facts and circumstances of each case.  
Efficient Construction Corp.
, 225 Ill. App. 3d at 181, 587 N.E.2d at 1075; 
Northern Insurance Co. of New York v. City of Chicago
, 325 Ill. App. 3d 1086, 1091, 759 N.E.2d 144, 149 (2001).
  Reasonableness is an objective standard and can be determined as a matter of law where, as here, the facts are not in dispute.  
Northern Insurance Co. of New York
, 325 Ill. App. 3d at 1091, 759 N.E.2d at 149.  

In determining what constitutes reasonable notice, Illinois courts have examined the type of policy at issue 
and have noted differences in the application of reasonableness depending upon the type of coverage provided.  See, 
e.g.
, 
Tribune
, 306 Ill. App. 3d at 790, 715 N.E.2d at 271-72.  When examining reasonableness in the context of a primary policy, courts recognize that it is more important for a primary carrier to receive prompt notice because it must be able to adequately investigate the facts of the occurrence and defend the suit.    Therefore, under the "as soon as practicable" language, the test is generally whether a reasonably prudent person could foresee a suit involving the policy and would contact his or her insurer.  
Northern Insurance Co. of New York
, 325 Ill. App. 3d at 1091, 759 N.E.2d at 149.  

In contrast, when examining reasonableness under an excess policy, courts consider that the excess insurer's obligation to provide coverage is only triggered once the primary insurance has been exhausted, and that the excess insurer expects the primary insurer to investigate the facts and undertake the defense of the lawsuit.  Therefore, the language of the excess policy generally requires notice of an occurrence or suit "when it appears likely" that the excess policy will be implicated.  See, 
e.g.
, 
Tribune
, 306 Ill. App. 3d at 790, 715 N.E.2d at 271-72.  Therefore, in this context, courts consider "when a reasonable person would have believed it reasonably likely that the claim would implicate the excess insurance."  
Tribune
, 306 Ill. App. 3d at 790, 715 N.E.2d at 272.    

In the present case, despite the requirement that Walsh provide notice of an occurrence or suit "as soon as practical," meaning within a reasonable time based upon the relevant facts and circumstances, Zurich argues that its policy should not be treated like other true excess policies which give the insured discretion in providing notice.  Unlike most excess policies, its notice provision does not specifically include the language which requires notice "when it appears likely" that the policy will be implicated.  Nevertheless, the language of the notice provision contemplates the exercise of some judgment on the part of the insured and that judgment is necessarily impacted by the particular facts of each case.  Additionally, the endorsement to the Zurich policy specifically provides that coverage is not available until all other "valid and collectible insurance" is exhausted.
  Therefore, it is undisputed that the Zurich coverage is excess and contingent upon the exhaustion of the Reliance policy.  Accordingly, given that coverage under the Zurich policy is not available until all other insurance is exhausted, it would follow that what constitutes reasonable notice in this case depends upon when a reasonably prudent person could foresee a suit involving the excess coverage and would contact his or her insurer
.  
 

Here, it is undisputed that Walsh is a sophisticated insured and that it timely notified Reliance, its primary insurer on the Blue Cross Project, of the four lawsuits.  There is no dispute regarding Reliance's ability to investigate and defend those suits.  It is also undisputed that Reliance was defending Walsh in those cases until it was declared insolvent on October 3, 2001.   The Reliance policy provided a coverage limit of $1 million per occurrence, $2 million aggregate, and was supplemented by a $100 million umbrella policy.  In light of the extensive coverage available to Walsh, Walsh had no reason to foresee that the four lawsuits would implicate the coverage provided by Zurich until it received notice of Reliance's insolvency.  

There are no facts in the record to suggest, and Zurich does not argue, that Walsh had any information that the damages sought in the underlying litigation would implicate the excess coverage.  Moreover, 
there are no facts in the record to suggest, and Zurich does not argue, that Walsh could have anticipated that its primary insurer would become insolvent.   Twelve days later, Walsh notified Zurich of the pending lawsuits, provided Zurich with copies of the complaints, and requested that Zurich defend and indemnify it under the terms of its policy
.  Based upon these relevant facts and circumstances here, it was reasonable for Walsh to notify Zurich of the pending lawsuits within 12 days after it was informed of Reliance's insolvency.

In addition to assessing the soundness of the proffered reason for the delay, Illinois courts give some consideration to whether the insured's delay prejudiced the insurer.  The degree upon which prejudice is a factor depends upon whether the court is considering a notice-of-occurrence situation or notice-of-suit situation.  See 
Montgomery Ward & Co., Inc.
, 324 Ill. App. 3d at 449, 753 N.E.2d at 1005.  In the notice of occurrence context, courts have been inconsistent.  Some courts have found that while prejudice is not dispositive of the insurer's obligation to defend or indemnify
, it is a factor in assessing the reasonableness of the notice.  See, 
e.g.
, 
American Country Insurance Co. v. Bruhn
, 289 Ill. App. 3d 241, 247, 682 N.E.2d 366, 370 (1997); 
Kerr v. Illinois Central R.R. Co.
, 283 Ill. App. 3d 574, 581, 670 N.E.2d 759, 764-65 (1996); 
Rush Presbyterian-St. Luke's Medical Center
, 231 Ill. App. 3d at 151, 595 N.E.2d at 1316.  Other courts have found that lack of prejudice to the insurer is only relevant where either (1) the delay in notice was relatively brief or (2) where the insured has a good excuse for the delay.  See, 
e.g.,
 
Montgomery Ward & Co., Inc.
, 324 Ill. App. 3d at 449, 753 N.E.2d at 1005
; 
Twin City Fire Insurance Co. v. Old World Trading Co.
, 266 Ill. App. 3d 1, 8-9, 639 N.E.2d 584, 589 (1993).  

Where notice of the lawsuit is the issue, the modern rule is that "‘the insurer is required to show that it was prejudiced by the insured's omission or delay in order to escape liability on its policy.’"  
Illinois Founders Insurance Co. v. Barnett
, 304 Ill. App. 3d 602, 611-12, 710 N.E.2d 28, 35 (1999), quoting 
Rice v. AAA Aerostar, Inc.
, 294 Ill. App. 3d 801, 808, 690 N.E.2d 1067 (1998).  See also 
Cincinnati Insurance Co. v. Baur's Opera House, Inc.
, 296 Ill. App. 3d 1011, 1018, 694 N.E.2d 593 (1998) ("for [the insurer] to escape liability, [the insurer] must suffer prejudice as a result of [the insured's] failure to timely notify it of a lawsuit," but also indicating that prejudice is a "factor" in the reasonableness analysis); 
Home Insurance Co. v. Three I Truck Line, Inc.
, 59 F. Supp. 2d 734, 736 (N.D. Ill. 1999).

Here, with respect to the notice of occurrence, we consider prejudice as a factor in our analysis.  Zurich has not argued that it was in any way prejudiced by an inability to adequately investigate the claims or raise certain defenses.   It has not shown in any way that it was unable to protect its interests.  It is further evident from the record that Walsh gave adequate notice to the primary insurer and was represented by the primary insurer's counsel up until the time Walsh notified Zurich of the occurrences and the lawsuits.   Accordingly, the lack of prejudice here supports our conclusion that Walsh gave reasonable notice of the occurrences.

With respect to the notice of the four lawsuits, Zurich directs our attention to the language of the policy requiring Walsh to "immediately forward to the company every demand, notice, summons or other process received by him or his representative."  "Immediate" in this context "has been uniformly interpreted to mean within a reasonable time, taking into consideration all the facts and circumstances."  
Kenworthy v. Bituminous Casualty Corp
., 28 Ill. App. 3d 546, 548, 328 N.E.2d 588, 590 (1975).  Here, as soon as Walsh had notice of the insolvency, it immediately forwarded the suit papers.  Additionally, we have already determined that Zurich had actual notice of the lawsuits “as soon as practicable,” meaning within a reasonable time to sufficiently locate and defend the suits.  Furthermore, Zurich has not argued that it was prejudiced by the delay in forwarding the suit papers.  Construing the policy as a whole, and taking the notice conditions in the light most favorable to Walsh, Zurich is not relieved of its obligation to defend Walsh in the underlying litigation.

Accordingly, for all of the foregoing reasons, we affirm the judgment of the circuit court.

Affirmed.  

HARTMAN and GREIMAN, J. J., concur. 

        

  

 

    

  
   
  

              

      

FOOTNOTES
1: The language used in the notice provisions of the policy is “as soon as practicable” instead of the “as soon as practical” language found in endorsement 7.  The parties do not argue that these phrases have distinct meanings and we consider them as one and the same.