# In the
# United States Court of Appeals
## For the Seventh Circuit

———————

Nos. 04-4147 & 05-1471

ILLINOIS SCHOOL DISTRICT AGENCY,
an intergovernmental cooperative,

*Plaintiff-Appellant*,

*v.*

PACIFIC INSURANCE COMPANY, LIMITED,
a Connecticut Corporation,

*Defendant-Appellee*.

———————

Appeals from the United States District Court
for the Central District of Illinois.
No. 02 C 3173—**Jeanne E. Scott**, *Judge.*

———————

ARGUED FEBRUARY 7, 2006—DECIDED DECEMBER 5, 2006

———————

Before BAUER, RIPPLE and WOOD, *Circuit Judges*.

RIPPLE, *Circuit Judge.* The Illinois School District Agency ("Agency") appeals the district court's partial grant of summary judgment on behalf of Pacific Insurance Company, Ltd. ("Pacific"). The district court held that Agency was not entitled to recover costs attributable to certain claims because those claims were not covered by an insurance policy Pacific issued to Agency. In our view, Agency came forward with sufficient evidence that Pacific's policy should have covered an estoppel claim made

against Agency in the underlying litigation. Because this evidence presents a genuine issue of material fact, we reverse the grant of summary judgment to Pacific and remand the case for further proceedings consistent with this opinion.

# I

# BACKGROUND

## A. Facts

Agency is an intergovernmental cooperative. It consists of member Illinois school districts and is organized to provide joint self-insurance for the member school districts. Essentially, Agency functions as an insurance provider for the member school districts.

There are two insurance policies at issue in this case. The first is a general liability insurance policy ("General Liability Policy") that Agency issued to one of its member districts, the East Moline School District ("East Moline"). The other policy is an errors and omissions policy ("E & O Policy") which Agency purchased from Pacific. The E & O Policy was not a reinsurance policy; rather, it covered Agency's own liability for its actions. First State Management Group, Inc. ("First State") acted as Pacific's agent in administrating claims Agency made on the Pacific policy, but is not a party to this appeal.

The current dispute is best understood in light of a series of lawsuits among East Moline, Pacific, Agency and other parties concerning the interpretation of these insurance contracts. We therefore shall discuss briefly each of these actions.

### 1. The *Mancilla* Action

In April of 1994, the Mancilla family sued East Moline for injuries that resulted when an East Moline student brought mercury home from school ("*Mancilla* action"). The suit was filed in the Circuit Court of Rock Island County, Illinois. Agency, through its third-party adminis-trator, Martin Boyer Company ("Martin Boyer"), initially agreed to defend East Moline. Martin Boyer determined that East Moline's defense was covered by the General Liability Policy.

Later, however, Agency hired a new third-party admin-istrator, Hinz Claim Management ("Hinz"). Hinz re-viewed the *Mancilla* action and concluded that the suit was not within East Moline's coverage under the General Liability Policy because claims for mercury poisoning were excluded by an absolute pollution exclusion. In April of 1996, two years after the suit was initiated, Hinz notified East Moline that Agency would no longer provide a defense to the *Mancilla* action. In November of 1997, the *Mancilla* action was settled for $628,040 plus costs and fees.

### 2. The *East Moline* Action

In June of 1996, East Moline filed a suit in Illinois state court ("*East Moline* action"). It sought a declaratory judg-ment against Agency that the General Liability Policy obligated Agency to reimburse East Moline for costs incurred in the defense of the *Mancilla* action. East Moline alleged that Agency had acted in "bad faith" under 215 ILCS 5/155, that Agency had waived its right to assert a defense under the General Liability Policy and that Agency was estopped from denying East Moline defense of the suit.

In March of 1998, the district court granted summary judgment on the contract claim in favor of Agency. It held that the mercury claim fell within the pollution exclusion and thus was outside the scope of coverage. In 2001, the court granted Agency summary judgment on the bad faith and waiver claims. In July of 2001, the estoppel claim went to trial, and Agency prevailed.

### 3.  The *Martin Boyer* Action

Agency sued Martin Boyer in state court to recover defense fees and costs that it had incurred defending itself in the *East Moline* action ("*Martin Boyer* action"). Agency obtained a judgment in the amount of $564,000 from Martin Boyer in July of 2004. There is no evidence in the record that Agency has received this award.

### 4.  The Current Action

Agency next made a demand on Pacific under the E & O Policy. In this action, Agency likewise sought reimbursement of all costs in defending the *East Moline* action. Pacific refused to reimburse Agency for the full costs, and Agency then filed the present action. The complaint alleged four counts. Count I sought a declaratory judgment that Pacific was obligated to pay all of Agency's costs for the *East Moline* action. Count II alleged that Pacific breached the policy by failing to pay the full costs and sought recovery of those costs. Count III alleged that Pacific vexatiously refused to pay these costs in violation of 215 ILCS 5/155.[1]

---

[1] The Amended Complaint also alleged a count, Count IV, against Pacific's agent First State alleging that First State had
(continued...)

*See* R.23. In short, Agency sought declaratory and monetary relief for the cost of defending itself against each of the claims that East Moline brought against it in the *East Moline* action: the claim that Agency breached the contract with East Moline; the claim that Agency had acted in bad faith in violation of 215 ILCS 5/155; the claim that Agency was estopped from denying coverage; and the claim that Agency had waived the right to deny coverage.

Pacific raised a number of affirmative defenses. One of those defenses was that a policy exclusion in the E & O Policy ("Exclusion (d)") prevented Agency from obtaining declaratory and monetary relief on its claims against Pacific. The text of Exclusion (d), listed in the E & O Policy, reads as follows:

> This Insurance shall not indemnify the Insured for loss incurred from any claim:
>
> ***
>
> (d)     for obligations or responsibilities assumed by the Insured under any contract unless liability therefore would have attached to the Insured by reason of the Insured's negligent acts, errors or omissions or by reason of the Insured's actual or alleged breach of duty, neglect, error, misstatement, misleading statement or other act or omission in the absence of such a contract com-

---

[1] (...continued)
breached its contract with the Agency on behalf of Pacific. *See* R.23 at 10-11. First State was dismissed from the action by the district court on July 13, 2004, after the district court granted summary judgment in First State's favor, and Agency has not appealed that dismissal. *See* R.67 at 17.

> mitted in the Insured's capacity as stated in the Insuring Agreements.

R.1, Ex.A at 1-2. Pacific's answer also included various other affirmative defenses, including: that Agency failed to allocate between covered and uncovered claims and that Agency did not provide timely notice to Pacific of the *East Moline* action as required by the E & O Policy.

Pacific then moved for summary judgment. Agency cross-moved for summary judgment on a number of Pacific's affirmative defenses, including the defense that Agency failed to allocate between covered and non-covered claims and that Agency failed to give timely notice to Pacific of the *East Moline* action.

## B. District Court Proceedings

On July 13, 2004, the district court entered partial summary judgment in favor of Pacific and partial summary judgment in favor of Agency. The court noted that the parties do not dispute that East Moline's claim that the General Liability Policy required Agency to defend the *Mancilla* action is a contract claim excluded from coverage under Exclusion (d) of the E & O Policy. However, the parties also agree Agency's costs of defending against East Moline's bad faith failure to defend claim are covered by the E & O Policy because this claim is non-contractual. R.67 at 10. The parties further agreed that Illinois law controls the interpretation of the insurance policies. The parties disagreed as to whether Agency's costs of defending itself against East Moline's waiver and estoppel claims are excluded from the E & O Policy that Agency obtained from Pacific. *Id.*

The district court granted partial summary judgment to Pacific on Agency's claim that Pacific was to reimburse it for the costs it incurred while defending the estoppel and waiver claims brought by East Moline. The court also granted partial summary judgment to Agency on Pacific's affirmative defense that Agency failed to give Pacific timely notice of the *East Moline* action as required by the E & O Policy.

The district court reached its decision by concluding that East Moline's waiver claim was not covered by the E & O Policy. The court noted that Exclusion (d) excludes from coverage any losses that arise by contract unless the basis for liability would have attached even in the absence of a contract. In East Moline's suit against Agency, East Moline alleged that Agency had waived its right to assert the Absolute Pollution Exclusion in the General Liability Policy. Agency thus remained obligated to treat the claims against East Moline in the *Mancilla* action as covered by the Policy. The court held that the alleged liability was based on the General Liability Policy and, due to Agency's waiver of its rights under the pollution exclusion, would not have attached absent that agreement. Therefore, the court held that East Moline's waiver claim was a contract claim and excluded from coverage pursuant to Exclusion (d) of Agency's E & O Policy.

The district court then held that the estoppel claim involving the pollution exclusion is excluded from E & O Policy coverage by Exclusion (d). The district court stated that, in an insurance context, estoppel arises when an insured tenders the defense of a claim to an insurer, and the insurer does not either 1) defend under a full reservation of rights or 2) file a declaratory judgment action to determine whether the claim is covered and whether

the insurer has a duty to defend. *Id.* at 11-12 (citing *Employers Ins. of Wausau v. Ehlco Liquidating Trust*, 708 N.E.2d 1122, 1135 (Ill. 1999)). Had East Moline prevailed on its estoppel theory, Agency would have been obligated to treat the claim from the *Mancilla* action as a claim covered by the General Liability Policy. *Id.* at 12. Because liability would have been defined by the General Liability Policy and would not have arisen in absence of that agreement, the estoppel claim was also within the E & O Policy's Exclusion (d).

Next, Pacific asserted that it was not obligated to reimburse Agency for the costs of defending East Moline's bad faith claim because Agency did not allocate defense costs between this covered claim and other uncovered claims. *Id.* Pacific argued that the E & O Policy dictated that costs should be allocated on a pro rata basis between uncovered and covered claims. However, the district court held that the Policy did not contain such a provision. *Id.* at 13.

The court then held a bench trial on the remaining issues, namely the amount and reasonableness of the fees Agency sustained in defending against East Moline's § 155 claim. The district court rejected Pacific's contention that the previous *Martin Boyer* action in state court barred recovery. R.83 at 7. The court also rejected Pacific's argument that the district court should abstain under *Colorado River Water Conservation District v. United States*, 424 U.S. 800 (1976), because the proceedings were not parallel and because they were between different parties involving different contracts. *Id.* at 9-10.

The court then analyzed the legal defense costs submitted by Agency. It determined that some should be reimbursed under the policy because they furthered either

the case in general or the bad faith claim. Other costs, relating exclusively to the estoppel and waiver claims, were held by the district court to be non-reimbursable under the E & O Policy. The district court entered a judgment against Pacific for $98,638.66; the district court determined this amount to be the cost of defending East Moline's § 155 claim against Agency. *Id.* at 21. Agency now appeals the grant of partial summary judgment in favor of Pacific.

## II

## DISCUSSION

### A. Estoppel Claim

#### 1.

Agency submits that, in the *East Moline* litigation, it had to defend against a claim of equitable estoppel and that such a claim is covered by Pacific's E & O Policy. In addressing this contention, we must examine the text of Exclusion (d) of the E & O Policy to ascertain whether it excludes coverage of Agency in the event of an "equitable estoppel" claim. Under Illinois law, if the words of an insurance policy are unambiguous, we must give them their plain, ordinary and popular meaning; if the words are susceptible to more than one reasonable interpretation, they are "ambiguous and will be construed in favor of the insured and against the insurer that drafted the policy." *Maremont Corp. v. Cont'l Cas. Co.*, 760 N.E.2d 550, 554 (Ill. App. Ct. 2001). In Illinois, the interpretation of an insurance policy is a question of law. *See, e.g.*, *Zurich Ins. Co. v. Walsh Constr. Co. of Ill., Inc.*, 816 N.E.2d 801, 805 (Ill. App. Ct. 2004).

In our view, the most reasonable reading of Exclusion (d) is that Pacific is not liable "for obligations or responsibilities assumed by the Insured under any contract" *unless* liability would have attached, independently of the contract language, to Agency by reason of Agency's "negligent acts, errors, or omissions." In the case of equitable estoppel, Agency's liability would arise not because it was contractually obligated to defend East Moline, but because it had taken control of East Moline's defense to East Moline's disadvantage. Such an act could be a "negligent" act that is not excluded from coverage by Exclusion (d). The remedy would be one in equity, not one determined by the terms of the contract. In fact, contractual obligations may be irrelevant.[2] In such a situation, any alleged estoppel applies not due to the terms of a contract between the insurer and the insured, but rather because of the insurer's actions themselves. Accordingly, an equitable estoppel claim is outside the terms of the policy exception because the claim is not based on the contract. Rather, it seeks a remedy for Agency's negligent action in taking up East Moline's defense, controlling it even though it was not contractually obligated to do so, and then ceasing this defense to the detriment of East Moline. Following Illinois law, we therefore shall construe the policy in favor of the insured, and, for the reasons set forth below,

---

[2] In *Nationwide Mutual Insurance Co. v. Filos*, 673 N.E.2d 1099, 1104 (Ill. App. Ct. 1996), the insurer was estopped from denying coverage after it began to provide a defense for its insured, even though the insurance policy that would have required the insurer to defend the insured had expired seven years before the date of the loss. *Id.* at 1103-05; *see also id.* at 1104 (noting that an insurer may "be estopped from denying coverage, notwithstanding that coverage for the risk did not in fact exist").

we conclude that a claim of "equitable estoppel" is not one that is excluded from policy coverage by Exclusion (d) of the E & O Policy.

In Agency's view, the E & O Policy covered the cost of its defending against East Moline's estoppel claim because the claim was one for equitable estoppel, not contractual estoppel. It regards Exclusion (d) as excluding only liability that "(1) is assumed under contract, and (2) would not have arisen in absence of the contract." Appellant's Br. at 8 (emphasis in original). Agency urges that the estoppel claim brought against it by East Moline meets neither of these two prongs.

Agency submits that Illinois recognizes two distinct theories of estoppel. It labels them "contractual estoppel" and "equitable estoppel." "[C]ontractual estoppel," it continues, is the type of estoppel relied upon by the district court. Under this theory, an insurer that believes it has no duty to defend a tendered claim can avoid liability if it either: 1) defends under a reservation of rights or 2) seeks a declaratory judgment that it has no obligation to defend. If an insurer simply declines to defend and is later found to have denied wrongfully coverage, the insurer is estopped from raising policy defense to coverage. *Id.* at 9 (citing *Employers Ins.*, 708 N.E.2d at 1134-35). Thus, according to Agency, "contractual estoppel" is "premised on the notion that, by wrongfully refusing to provide a defense, the insurer has breached the terms of its own policy of insurance." *Id.* at 9.

Agency submits that the district court misapprehended the claim asserted in the East Moline action. It submits that East Moline alleged "equitable estoppel"—not "contractual estoppel." "Equitable estoppel," according to Agency, arises when there has been a showing that

the insurer induced the insured to surrender control of the defense, to the insured's detriment. *Id.* (citing *Maryland Cas. Co. v. Peppers*, 355 N.E.2d 24, 29 (Ill. 1976)). It arises out of "*conduct*, not *contract*, and as such it may arise even in the absence of a contract." *Id.* at 10-11 (emphasis in original). Because Exclusion (d) only excludes liabilities assumed by contract that would not have arisen in the absence of contract, Agency submits that Exclusion (d) would not exclude a claim of "equitable estoppel."

Pacific does not disagree with Agency's description of the two different theories of estoppel recognized in Illinois law. It correctly accepts that Illinois case law supports the distinction. *See Consol. Rail Corp. v. Liberty Mut. Ins. Co.*, 416 N.E.2d 758, 763 (Ill. App. Ct. 1981) (distinguishing between a theory of estoppel where there is a contractual potential for coverage, but the insurer refuses coverage from the outset and a theory of estoppel where an insurer assumes the defense of an insured and then withdraws that defense). The Supreme Court of Illinois has also stated that this contractual estoppel doctrine "has roots in the principle of equitable estoppel . . . [and] has since developed into a distinct doctrine that stands on its own." *Employers Ins.*, 708 N.E.2d at 1135. Furthermore, the Supreme Court of Illinois has applied the "equitable" theory when an insurer undertakes the defense of an insured and later attempts to withdraw that defense, to the detriment of the insured. *See Maryland Cas. Co.*, 355 N.E.2d at 29 (stating that an insurer may be estopped from asserting a noncoverage defense where the insurer undertook defense of an action, but requiring prejudice to the insured as a result of the insurer's undertaking said defense); *cf. Nationwide Mut. Ins. Co. v. Filos*, 673 N.E.2d 1099, 1104 (Ill. App. Ct. 1996) (stating that an insurer can be estopped

from denying coverage "where an insurer defends an action on behalf of an insured, with knowledge of facts that would provide a defense to coverage, but without a reservation of rights").

### 2.

We now turn to the record before us. In its response to Pacific's motion for summary judgment, Agency submitted that the *East Moline* action went to trial "solely on the basis of equitable estoppel." In support of that assertion, it attached a court order of July 12, 2001 in the *East Moline* action. In that order, the state trial court had stated that "the issue to be decided is whether or not actual prejudice occurred to the plaintiff as a result of defendant's withdrawal of coverage and defense" in the *Mancilla* action. The state court further had noted that it had "previously ruled that the issue is an equitable request based on estoppel." R.57, Ex.3. The state court also had stated that it did "have questions about the application of the 'absolute pollution exclusion,' but recognize[d] that in lieu [sic] of the rulings of the appellate court and previous rulings in this court, [the] issue is no longer before [it]." *Id.*

The state court's statement indicates that the equitable relief sought was not based on the contractual liability under the General Liability Policy and its exclusions. The state court evinced a strong concern about the equities in the case, stating that it "would like to exercise whatever equitable powers [it] might have and award plaintiff their [sic] costs of defending the underlying lawsuit." *Id.* This view of the state court's opinion is strengthened by the fact that the state court previously had found, on sum-

mary judgment, that Agency did not have a duty to defend under the contract based on the absolute pollution exclusion. The state court, in the statement we have just quoted, attempted to determine the effect of Agency's taking over the defense and later withdrawing. Such an inquiry is consistent with equitable estoppel, not contractual estoppel.

Notably, the state court opinion also discusses the possibility of prejudice to East Moline as a result of Agency's withdrawal of its defense in the *East Moline* action. Illinois courts have said that prejudice "is not a critical factor" in a *contractual* estoppel case. *Consol. Rail Corp.*, 416 N.E.2d at 764 (emphasis added). Indeed, in *Consolidated Rail*, the court said that contractual estoppel arises when the insurer "breached the contract with its client" by refusing to defend where potential coverage exists, and it is in that case that "[p]rejudice is not a critical factor." *Id.* at 764. Moreover, the Illinois appellate court noted that equitable estoppel could be based on situations in which an "insurer assumes the defense and then attempts to withdraw that defense to the detriment of the insured." It stressed that, in that case, estoppel could not apply unless the insured "experienced some loss, injury, damage or *prejudice*." *Id.* at 763 (emphasis added).

Because we do not have the entire state court record before us and can only rely on what the parties have attached to their summary judgment motions, we cannot ascertain definitively the basis of the state court's decision in the *East Moline* action. However, the fact that the state trial court looked to prejudice in assessing the estoppel argument raises the distinct possibility that the trial court understood East Moline to have raised an estoppel argu-

ment. Another portion of the record, while ambiguous, supports, to some degree, the contention that an equitable estoppel theory may have been advanced by East Moline against Agency in the *East Moline* action. On April 25, 2002, an attorney representing Agency sent a letter to First State, Pacific's agent, discussing the claims brought by East Moline against the Agency in the *East Moline* action. *See* R.57, Ex.5. The letter described East Moline's estoppel claim as one that was brought "because [Agency] had assumed complete and exclusive control of the defense of the *Mancilla* action for over two years without ever reserving its rights under the coverage agreements, without ever notifying [East Moline] of any potential coverage question and without ever filing a declaratory judgment action." *Id.* at 3. The letter's language, although also discussing matters more compatible with contractual estoppel, contains language ("complete and exclusive control") compatible with the equitable estoppel defense.

It is clear, then, that, in this case, *Agency* placed in issue whether, in the earlier state litigation, it had been required to defend against an equitable estoppel claim that was covered by the E & O Policy issued by Pacific.

## B. Pacific's Other Contentions

Pacific raises three other contentions on appeal. First, Pacific argues that Agency failed to give Pacific proper notice of the pending *East Moline* action, as required by the policy; it contends that, consequently, Agency should not recover under the E & O Policy. Appellee's Br. at 22. Next, Pacific contends that Agency should not recover because it failed to allocate between covered and uncov-

ered expenses, which Pacific claims was Agency's duty. *Id.* at 23-24. Finally, Pacific argues that Agency's judgment against Martin Boyer constitutes a complete bar to Agency's current action against Pacific under the Illinois doctrine allowing only one recovery for an injury, irrespective of the availability of multiple remedies. *Id.* at 25. Alternatively, Pacific claims that the district court should have abstained from ruling on Agency's claims under the *Colorado River* doctrine. *Id.* at 26.

Although Pacific did not file a cross-appeal, it now advances these arguments by stating, correctly, that we can affirm the district court on any ground supported by the record. *See Williams v. Seniff*, 342 F.3d 774, 793 (7th Cir. 2003). However, although an appellee can advance arguments in support of a district court's judgment based on "any matter appearing in the record," an appellee cannot, absent a cross-appeal, "attack the decree with a view either to enlarging his own rights thereunder or of lessening the rights of his adversary." *Morley Co. v. Maryland Cas. Co.*, 300 U.S. 185, 191 (1937). The Supreme Court of the United States further has stated that a party who does not cross-appeal is "bound by the decree in the court below" and cannot be heard "except in support of the decree from which the appeal of the other party is taken." *Id.* at 191-92. We have noted that "an appellee's brief is not the appropriate place for a victorious party to contest one adverse finding by the district court—that is the province of a cross-appeal." *Meridian Mut. Ins. Co. v. Meridian Ins. Group, Inc.*, 128 F.3d 1111, 1117 (7th Cir. 1997). Keeping these limitations in mind, we now turn to Pacific's specific claims.

Pacific's first argument, that Agency failed to give Pacific timely notice, was disposed of by the district court at the

summary judgment stage when the district court granted Agency's motion for summary judgment on that affirmative defense. *See* R.67 at 17. Because the court granted summary judgment to Agency, not to Pacific, on this affirmative defense, Pacific cannot now relitigate this defense on appeal absent the filing of a cross-appeal. If Pacific were to succeed, it would impermissibly expand Pacific's rights at the expense of Agency. *See United States ex rel. Stachulak v. Coughlin*, 520 F.2d 931, 937 (7th Cir. 1975) (rejecting an attempt by an appellee to contest a district court's finding without filing a cross-appeal when "it [was] plain" that the appellee was "not merely attempting to support the judgment but rather to expand his rights under the decree," as the effect of the appellee's argument would alter the judgment in a manner favorable to the appellee).

Pacific's second argument regarding the allocation of costs, however, was not disposed of by the district court at the summary judgment stage; the court granted summary judgment to neither Pacific nor Agency on this affirmative defense. Therefore, we shall discuss the merits of this defense only insofar as it relates to any possible recovery under the estoppel claim. Because Pacific has not filed a cross-appeal, the judgment against it and in favor of Agency on the bad faith claim cannot be reduced due to the Supreme Court's admonition in *Morley*. *Morley* limits our consideration even if we were to find that Pacific had raised a viable affirmative defense that would have applied to Agency's claims for the cost of defending the bad faith claim under the E & O Policy.

Turning to the merits of Pacific's second contention, Pacific argues that Agency had a duty to allocate between non-covered and covered claims, and that Agency failed

to do so. All parties agree that some of Agency's *East Moline* action defense costs, such as the contractual liability claim defense, are not recoverable under the E & O Policy. The parties further agree that some of Agency's defense costs, such as the defense of the bad faith claim, are recoverable. Pacific appears to be arguing that Agency had a duty, under the policy, to allocate between non-covered and covered claims when submitting a claim for reimbursement under the E & O Policy. However, Pacific points to no section of the E & O Policy mandating that Agency allocate the defense costs incurred between covered and uncovered claims. Therefore, it appears that allocation of costs are not required to obtain benefits under the E & O Policy. Of course, if the district court rules in Agency's favor on remand, Agency then will bear the burden of proving the amount of costs expended in defending the estoppel claim in the *East Moline* action. *See St. Michael's Orthodox Catholic Church v. Preferred Risk Mut. Ins. Co.*, 496 N.E.2d 1176, 1179 (Ill. App. Ct. 1986) (holding that, at trial, "[w]here part of a loss resulted . . . from a peril not covered by insurance, the insured must show the amount of loss that is covered by [its] policy").[3]

Pacific's final argument, regarding the alleged double recovery, was also not decided against Pacific on sum-

---

[3] Pacific also is arguing that it should only pay a pro rata share of the costs incurred by Agency in defending the *East Moline* action. Pacific cites to authority supporting the proposition that Illinois courts have upheld pro rata allocation of defense fees and other expenses. However, this contention appears to be a premature argument because no costs have been awarded on the estoppel claim, and therefore we shall not address it in substance.

mary judgment. However, this argument was rejected by the district court in its post-bench trial judgment. The court declined to determine whether a recovery from both Martin Boyer and Pacific would result in an impermissible double recovery, noting that "[t]here is no evidence that Agency has received any payment from Martin Boyer. Should the Agency receive such payment, those funds may possibly be set off against the judgment in this case to avoid a double recovery." R.83 at 9. On remand, Pacific can come forward with such evidence and reargue that a recovery should be barred as to any judgment granted by the district court on the estoppel claim.[4]

---

[4] Pacific also argues on appeal that the district court should have stayed the proceedings under the doctrine of *Colorado River Water Conservation District v. United States*, 424 U.S. 800 (1976), due to the state-court *Martin Boyer* action. Pacific raised this argument during the bench trial, and the court declined to stay the proceedings. Such a refusal was appropriate. Judgment was entered in the *Martin Boyer* action before the district court granted summary judgment and before the district court granted a final judgment after a bench trial in this case. Therefore, because a state court action was no longer pending, *Colorado River* abstention would have been inappropriate. *See Bass v. Butler*, 258 F.3d 176, 179 (3d Cir. 2001) (stating that *Colorado River* abstention "provides for federal deference to ongoing, not completed, parallel state proceedings"); *Rosser v. Chrysler Corp.*, 864 F.2d 1299, 1308-09 (7th Cir. 1988) (stating that a stay, not a dismissal, is appropriate under the *Colorado River* doctrine, because the reason to defer to the state court is to "avoid[ ] piecemeal litigation," and because after the state court proceeding is completed, the federal court may reach "remaining issues" not disposed of in the state court).

## Conclusion

For the reasons set forth in this opinion, the district court's partial grant of summary judgment in favor of Pacific is reversed. The case is remanded for further proceedings consistent with this opinion. Agency may recover its costs in this court.

REVERSED and REMANDED

A true Copy:

Teste:

_____

*Clerk of the United States Court of*
*Appeals for the Seventh Circuit*