# In the

# United States Court of Appeals

## For the Seventh Circuit

_____

No. 06-3730

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

ANTHONY L. ROGERS,

*Defendant-Appellant.*

_____

Appeal from the United States District Court
for the Northern District of Indiana, Fort Wayne Division.
No. 03 CR 78—**Theresa L. Springmann**, *Judge.*

_____

ARGUED NOVEMBER 1, 2007—DECIDED SEPTEMBER 4, 2008

_____


Before POSNER, WOOD, and SYKES, *Circuit Judges.*

SYKES, *Circuit Judge.* Federal Rule of Evidence 609(b) severely limits the use of a prior conviction to impeach a witness if a period of more than ten years has elapsed since the conviction or the witness's release from any confinement imposed for that conviction. This appeal presents the question of whether probation following a prison term constitutes "confinement" for purposes of the ten-year time limit under Rule 609(b)—in other words,

whether the ten-year clock begins to run upon the witness's release from prison or the expiration of his ensuing probation or parole. We conclude that probation does not constitute "confinement" within the meaning of Rule 609(b).

Anthony Rogers was tried in 2005 on charges of making a false statement on a firearm-purchase form and being a felon in possession of a firearm. He testified in his own defense and was impeached with his 1993 conviction for distribution of cocaine. Rogers was released from prison on that conviction in 1994 after his sentence was modified to probation; he then remained on probation supervision until 1999. Because probation does not constitute confinement, however, Rogers's conviction fell outside the ten-year time limit of Rule 609(b), and its admission for impeachment purposes was therefore error. But given the overwhelming evidence of his guilt, we conclude the error was harmless and affirm his convictions.

## I. Background

Anthony Rogers became the subject of a federal investigation when he made two separate purchases of the same make and model handgun in a single month—a sign of possible straw purchases. These purchases required Rogers to lie on federal firearms paperwork—specifically, forms requiring (among other things) that he attest truthfully that he was the firearm's "actual buyer." One of the guns was linked to a crime scene in Chicago. In addition, Rogers had a felony conviction for cocaine dealing in Texas

in 1993, making it illegal for him to possess a firearm.[1] *See* 18 U.S.C. § 922(g).

In the course of the investigation, ATF agents met with Rogers at the apartment he shared with his girlfriend. He admitted purchasing a firearm for a friend. He said he was initially reluctant to do so because he thought it might be illegal, but his friend ultimately persuaded him to make the purchase. Two handguns were eventually recovered from the apartment—one purchased in one of the suspected straw purchases and another that Rogers had purchased in 1992 or 1993 when he was in the military.

Rogers was indicted for making a false statement to a federally licensed firearms dealer, *see* 18 U.S.C. § 924(a)(1)(A), and being a felon in possession of a firearm, *see* 18 U.S.C. § 922(g)(1). The case proceeded to a one-day jury trial on April 12, 2005. Rogers took the stand in his own defense, admitting the straw purchase but claiming he thought his answer to the "actual buyer" question on the federal form was truthful. He also testified that the two guns found in the apartment had once been his but that he gave them to his girlfriend and never "messed" with them. The government impeached him with his 1993 conviction for cocaine dealing. Rogers's girlfriend also

---

[1] Rogers had a firearm permit issued by the State of Indiana, and the law at that time allowed a same-day firearm purchase upon presentation of a valid carry permit. The government advised us in its brief that at the time, Indiana apparently was not regularly checking for out-of-state convictions when issuing such permits, a procedure that has since been changed.

testified; she said Rogers gave her the guns for her protection. Rogers was convicted on both counts.

The district court made two posttrial rulings on the admission of Rogers's prior conviction. In the first ruling, the court erroneously believed that the conviction was less than ten years old and therefore admissible under Federal Rule of Evidence 609(a) on a showing that the probative value of this evidence outweighed its prejudicial effect. This ruling was based on the court's initial view that although Rogers had been released from prison on the 1993 conviction a year later, in 1994—outside the rule's ten-year window—he had remained on probation until 1999, and therefore the conviction fell within the ten-year time limit. On Rogers's motion for a new trial, however, the court corrected itself, holding that the time Rogers spent on probation did *not* bring the conviction within the time limit. Rule 609(b) requires that convictions outside the ten-year time limit satisfy a more strenuous standard: the conviction's probative value must *substantially* outweigh its prejudicial effect. The district court concluded that the 1993 cocaine-dealing conviction did not meet this more demanding standard. But the court found the error harmless and denied the motion for a new trial.

## II. Discussion

The sole issue in this appeal is whether Rogers's 1993 conviction was properly admitted to impeach him as a witness. Rule 609 of the *Federal Rules of Evidence* governs the admissibility of a witness's prior convictions for

impeachment purposes and permits impeachment of an accused as a witness if the probative value of his prior conviction outweighs its prejudicial effect. The rule generally excludes convictions more than ten years old, however:

> Evidence of a conviction under this rule is not admissible if a period of more than ten years has elapsed since the date of the conviction or of the release of the witness from the confinement imposed for that conviction, whichever is the later date, unless the court determines, in the interests of justice, that the probative value of the conviction supported by specific facts and circumstances substantially outweighs its prejudicial effect.

FED. R. EVID. 609(b). The ten-year time limit thus runs from the date of conviction or "the release of the witness from the confinement imposed for that conviction," whichever is later. There is no question here that the date of Rogers's conviction, 1993, falls outside the ten-year time limit, as does the date of his release from prison, 1994. We must decide whether the probation that followed his release from prison for that conviction (essentially, his parole) may be said to constitute "confinement imposed for that conviction."

We conclude that it may not. This is a question of first impression in this circuit, although the government notes that our decision in *United States v. Gant*, 396 F.3d 906 (7th Cir. 2005), refers to the date of the defendant's discharge from parole as the apparent starting point for the calculation of the ten-year time period. But *Gant* made no

more than a passing reference to the defendant's discharge from parole; the parties there did not dispute the age of the prior conviction, and the decision therefore did not affirmatively address whether parole equalled "confinement" for purposes of Rule 609(b). *Id.* at 909. Indeed, a close reading of *Gant* reveals that it would have been unnecessary for the court to address this issue because the defendant's release from prison *and* his discharge from parole were within Rule 609(b)'s ten-year time limit. *See id.* (noting that Gant was released from prison in the same year as his discharge from parole).

In *United States v. Daniel*, 957 F.2d 162, 167-68 (5th Cir. 1992), the Fifth Circuit concluded that "confinement" for purposes of calculating the ten-year time limit in Rule 609(b) does not include parole supervision. *Daniel* relied in part on the historical notes to Rule 609, which noted that the time limit would begin to run from "the date of the release of the witness from confinement imposed for his most recent conviction, or the expiration of the period of his parole, probation, or sentence granted or imposed." But in 1971 the revised draft of the rule contained the present language, which runs the ten-year time period from "the date of the conviction or of the release of the witness from the confinement imposed for that conviction." The Fifth Circuit concluded that the text of the rule as adopted would not support an interpretation that measured the ten-year time span from the end of parole. *Id.* at 168. We agree. Rule 609(b) unambiguously starts the clock at the date of conviction or release from "confinement," without any mention of periods of probation or parole.

The government views "the defendant's discharge from parole [ ]as the appropriate date of his 'release from confinement'" but does not explain why the term "confinement" as used in Rule 609(b) should be read to include periods of community supervision. Nothing in the rule itself suggests such an interpretation. Accordingly, we hold that "confinement" for purposes of the ten-year time limit in Rule 609(b) does not include periods of probation or parole.

In this circuit we have now defined both the starting and ending points for the calculation of Rule 609(b)'s ten-year time limit. The clock starts at the witness's release from any physical confinement, or in the absence of confinement, the date of the conviction. *See United States v. Rein*, 848 F.2d 777, 782 (7th Cir. 1988) (start date is not the date of the criminal act but the date of conviction). In *United States v. Thompson*, 806 F.2d 1332, 1339 (7th Cir. 1986), we held that the end date of the time limit for impeaching convictions is the start of the trial at which the witness is testifying. Other circuits have confronted the additional question of whether a revocation of parole stops the running of the ten-year clock. *See, e.g., United States v. Gray*, 852 F.2d 136, 139 (4th Cir. 1988) (stopping the time where the defendant had been reincarcerated after a parole violation); *United States v. McClintock*, 748 F.2d 1278, 1288-89 (9th Cir. 1984) (same for probation violations that implicate the original offense conduct). But that is a matter for another case. Here, we agree with the second of the district court's posttrial rulings that it was error to admit Rogers's prior conviction under the more lenient standard of Rule 609(a). More than ten years elapsed since

his release from prison in 1994, triggering the more strin-
gent admissibility standard of subsection (b).

As we have noted, Rule 609(b) is not an absolute bar to
the admission of a prior conviction that is more than ten
years old; it is, instead, an asymmetrical balancing test, one
that requires the probative value of a prior conviction to
*substantially* outweigh the prejudice caused by its admis-
sion into evidence. The district court concluded that
Rogers's cocaine conviction did not meet this more rigor-
ous test, and indeed, we have said that impeachment by
a conviction falling outside the rule's ten-year time
limit should be permitted only in rare and exceptional
circumstances. *See United States v. Fallon*, 348 F.3d 248, 254
(7th Cir. 2003) (citing *United States v. Shapiro*, 565 F.2d 479,
481 (7th Cir. 1977)). Here, the government does not
even attempt to argue that Rogers's cocaine conviction
qualifies, and we are hard-pressed to disagree with this
implicit concession. Accordingly, we agree with the
district court's conclusion that it was error to admit the
prior conviction for impeachment purposes.

We also agree, however, with the district court's assess-
ment that in this case the error was harmless in light of
the evidence presented at trial. An evidentiary error
warrants reversal only when the error had " 'a substantial
and injurious effect or influence on the jury's verdict.' "
*United States v. Redditt*, 381 F.3d 597, 601 (7th Cir. 2004)
(quoting other source). Under this standard, where a
limiting instruction is given or if the evidence is very
strong, the error usually will be harmless. *Id.* Here, the
evidence offered against Rogers was so overwhelming

that the erroneous admission of his prior conviction for impeachment purposes could not have had a serious effect on the verdict.

First, the jury heard evidence that Rogers had admitted knowingly making a false statement on ATF Form 4473 when he purchased the handgun for a friend while claiming to be the actual buyer. *See United States v. Howell*, 37 F.3d 1197, 1202 (7th Cir. 1994); *see also United States v. Obiechie*, 38 F.3d 309, 315 (7th Cir. 1994) (explaining that § 924(a)(1)(A) does not require knowledge of the law, only knowledge that the statement is in fact a false one). While Rogers claimed at trial that he believed his answer was truthful, the jury knew that Rogers had previously acknowledged that he suspected the purchase was illegal all along. Moreover, the government introduced evidence suggesting that Rogers had a penchant for making false statements on official forms, having lied on an application for military reenlistment and an application for an Indiana handgun permit.

Second, the government presented ample evidence to prove that Rogers possessed both of the firearms found in the apartment, in violation of § 922(g)(1). On this count, the government was required to prove that (1) Rogers had a prior felony conviction (a fact to which Rogers stipulated pursuant to *Old Chief v. United States*, 519 U.S. 172 (1997));[2] (2) he possessed a firearm; and (3) the firearm

---

[2] Rogers suggests that the admission of his prior conviction for impeachment purposes violated the rule of *Old Chief v. United*

(continued...)

traveled in or affected interstate commerce. 18 U.S.C. § 922(g)(1). Constructive possession is sufficient, and under that theory our case law requires only that a defendant knowingly have "the power and the intention at a given time to exercise dominion and control over an object, either directly or through others." *United States v. Alanis*, 265 F.3d 576, 592 (7th Cir. 2001) (internal quotation marks omitted). Also, constructive possession may be joint, *see id.*, and here, the evidence of joint constructive possession of the firearms was substantial. Rogers claimed that the firearms belonged to his girlfriend, but they shared the apartment where the firearms were kept (he spent more than 80 percent of his time living with her at that residence); he gave them to her and knew precisely where they were usually stored; and he worked and lived in close proximity to them.

---

[2] (...continued)

*States*, 519 U.S. 172, which permits a defendant to stipulate to his prior felony conviction and thereby preclude the government from introducing evidence of the conviction to prove the prior-felony element of the offense. Nothing in *Old Chief,* however, precludes impeachment by prior conviction under Rule 609 when the defendant in a felon-in-possession prosecution testifies as a witness in his own defense. *See United States v. Montgomery*, 390 F.3d 1013 (7th Cir. 2004) (defendant's prior felony admissible for impeachment in § 922(g)(1) prosecution); *United States v. Smith*, 131 F.3d 685, 687-88 (7th Cir. 1997).

In short, the evidence on both counts was plentiful and strong. Accordingly, the admission of Rogers's 1993 drug conviction, though error, was harmless.

AFFIRMED.