In the

# United States Court of Appeals

## For the Seventh Circuit

Nos. 08-1776 & 08-2193

ILLINOIS SCHOOL DISTRICT AGENCY,
an intergovernmental cooperative,

*Plaintiff-Appellant,*

*v.*

PACIFIC INSURANCE COMPANY LIMITED,
a Connecticut corporation,

*Defendant-Appellee.*

Appeals from the United States District Court
for the Central District of Illinois.
No. 3:02-cv-03173-JES-CHE—**Jeanne E. Scott**, *Judge*.

ARGUED FEBRUARY 11, 2009—DECIDED JUNE 29, 2009

Before BAUER, RIPPLE and WOOD, *Circuit Judges*.

RIPPLE, *Circuit Judge*. The Illinois School District Agency ("Agency") brought this action against Pacific Insurance Company, Ltd. ("Pacific"), alleging that Pacific had breached its insurance contract with Agency. The district court granted partial summary judgment to Agency and partial summary judgment to Pacific. The court then held

a bench trial on the remaining issues and entered judgment in favor of Agency in the amount of $98,638.66. Agency appealed the court's partial grant of summary judgment to Pacific.

On that first appeal, we vacated the partial grant of summary judgment to Pacific and remanded the case to the district court for trial on Agency's newly revived claim. *See Ill. Sch. Dist. Agency v. Pac. Ins. Co., Ltd.,* 471 F.3d 714 (7th Cir. 2006). On remand, the district court concluded that Pacific was liable for damages on that claim. The court went on, however, to issue a series of post-trial rulings, which resulted in no recovery by Agency on the new claim and revoked the $98,638.66 award to Agency from the first trial.

Agency then filed this appeal. For the reasons set forth in this opinion, we reverse the judgment of the district court and remand the case for further proceedings.

# I

# BACKGROUND

## A.

Agency is a cooperative that was formed by school districts in Illinois to provide insurance for those districts. In 1994, East Moline School District, one of Agency's members, was sued by a student and his family after the student brought mercury home from school. East Moline had a general liability insurance policy issued by Agency and therefore filed a claim under that policy for

coverage of its costs and attorney's fees in defending the mercury lawsuit. Agency's third-party administrator, the Martin Boyer Company, determined that the policy covered East Moline's claim. Agency therefore began paying for East Moline's defense and continued to do so for the next two years. In 1996, Agency retained a new third-party administrator. The new administrator determined that East Moline's claim actually was not covered by the general liability policy. Based on that determination, Agency stopped paying East Moline's defense costs.

East Moline ultimately settled the mercury suit. It then sued Agency to recover the defense costs it had incurred after Agency stopped paying. In that suit, East Moline advanced three claims: 1) that Agency's refusal to pay the claim violated Section 155 of the Illinois Insurance Code, which requires insurers to act in good faith (the "Section 155 claim"); 2) that Agency had waived its right to assert a defense under the general liability policy (the "waiver claim"); and 3) that Agency was estopped from denying that it was obliged to pay for East Moline's defense (the "estoppel claim"). Agency prevailed on all of the claims.

**B.**

Agency then filed an action in Illinois state court against Martin Boyer, its former third-party administrator. In that action, Agency advanced a number of claims related to Boyer's determination that the general liability policy required Agency to pay East Moline's costs in defending the mercury lawsuit.

Agency had an "errors and omissions" ("E&O") insurance policy issued by Pacific. Agency filed a claim under this E&O policy for reimbursement of the costs and attorney's fees it had incurred in defending the suit for defense costs by East Moline. Pacific denied Agency's claim. Agency then brought this action in the United States District Court for the Central District of Illinois; it sought reimbursement for its costs in defending the East Moline suit as well as for its costs and fees in its suit against Martin Boyer. After discovery, Agency and Pacific each filed a motion for summary judgment. The district court granted partial summary judgment to Agency; it concluded that the E&O policy required Pacific to reimburse Agency for its expenses in defending against East Moline's Section 155 claim. The court concluded, however, that the insurance policy did not cover East Moline's waiver and estoppel claims, and it granted summary judgment for Pacific on those claims. With Agency's consent, the district court granted summary judgment in favor of Pacific on the claims related to the Martin Boyer lawsuit.

The district court then held a bench trial to determine Agency's damages on the Section 155 claim. The court found that Agency spent $98,638.66 defending against that claim. The court entered judgment against Pacific in that amount.

## C.

Agency then filed its first appeal to this court. In that appeal, Agency sought review of the district court's grant

of summary judgment against it on the estoppel claim. Pacific did not file any appeal. On Agency's appeal, we reversed the grant of summary judgment for Pacific on the estoppel claim. *See Ill. Sch. Dist. Agency v. Pac. Ins. Co., Ltd.,* 471 F.3d 714 (7th Cir. 2006). We noted that, under Illinois law, there were two kinds of estoppel that East Moline could have raised against Agency: equitable estoppel and contractual estoppel. We interpreted the E&O policy to require Pacific to reimburse Agency for its costs in defending against an equitable estoppel claim but not against a contractual estoppel claim. Because it was unclear from the record whether East Moline's estoppel claim had been equitable or contractual, we vacated the grant of summary judgment on that claim and remanded the case to the district court for further proceedings.

On remand, the district court held a second bench trial to determine the nature of East Moline's estoppel claim. The court concluded that East Moline had raised both equitable and contractual estoppel claims and that, according to our decision on Agency's first appeal, Agency was entitled to reimbursement of the funds it had spent defending against the equitable estoppel claim. The court did not make a finding as to the amount of damages at that time.

Meanwhile, Agency's suit against Martin Boyer was proceeding in state court. That suit ended with a judgment in Agency's favor in the amount of $564,000 plus interest. In late 2007—after the district court had ruled against Pacific on the estoppel claim in Agency's suit, but

before the district court had determined damages—Martin Boyer paid Agency $756,480 to satisfy the judgment.

Pacific then filed a motion for summary judgment. Pacific argued that the judgment recovered by Agency from Martin Boyer fully compensated Agency for its costs in defending the East Moline suit. In its view, because both the Martin Boyer suit and the Pacific suit sought damages for the same loss—i.e., Agency's costs and fees in defending the East Moline suit—Agency now had been made whole and therefore could not prove any damages in its suit against Pacific. Because damages are an essential element of a claim for breach of contract, Pacific argued that it was entitled to summary judgment.

The district court agreed that the Martin Boyer judgment fully compensated Agency for the costs and fees it had incurred in defending against East Moline's claims and that Agency therefore could not prove any damages in its suit against Pacific. Accordingly, it granted Pacific's motion for summary judgment. Agency filed a notice of appeal on March 19, 2008.

On April 10, 2008, the district court entered a "Second Amended Judgment" that reiterated the $98,638.66 award to Agency on the Section 155 claim and awarded $1,931.63 in costs to Pacific on the estoppel claim. Pacific then filed a Rule 60 motion to "correct" the Second Amended Judgment, in which it argued that the award to Agency on the Section 155 claim should have been omitted from that judgment because "[t]he November 1, 2004 judgment had been previously vacated/superceded

by the Seventh Circuit Court of Appeals and this court's opinion [on February 19, 2008] granting summary judgment." R.149 at 2. Without waiting for Agency's response, the court granted the motion and issued an "Amended Judgment" on April 24, 2008. That judgment granted summary judgment only to Pacific; it omitted any mention of summary judgment in Agency's favor on the Section 155 claim, and it also omitted mention of the $98,638.66 award to Agency. Agency appealed from that judgment as well; Agency's two appeals have been consolidated.

## II

## DISCUSSION

We review de novo the district court's grant of summary judgment. *Grieveson v. Anderson*, 538 F.3d 763, 767 (7th Cir. 2008). "As a federal court sitting in diversity, we apply state substantive law and federal procedural law." *Camp v. TNT Logistics Corp.*, 553 F.3d 502, 505 (7th Cir. 2009) (citation omitted). The parties agree that the applicable state law in this case is the law of the State of Illinois.

Agency raises two issues in this consolidated appeal. First, it submits that the district court erred in granting summary judgment to Pacific on the estoppel claim. Second, it argues that the district court erred in omitting the $98,638.66 award on the Section 155 claim from its final order of judgment in the case. We shall consider these issues.

**A.  Agency's Estoppel Claim**

Agency first challenges the district court's grant of
summary judgment for Pacific on the estoppel claim.
Agency submits that its collection of the judgment from
Martin Boyer did not preclude a recovery against Pacific.
Pacific, on the other hand, submits that the grant of
summary judgment was proper because the Martin
Boyer recovery fully compensated Agency for the losses
it seeks to recover in this case.

In Illinois, "[i]t is well settled that an injured plaintiff
may receive only one full compensation for his or her
injuries." *Thornton v. Garcini*, 888 N.E.2d 1217, 1223 (Ill.
App. Ct. 2008) (citation omitted). In short, a plaintiff
is not entitled to recover twice for the same injury. *See*
*Eberle v. Brenner*, 505 N.E.2d 691, 693 (Ill. App. Ct. 1987)
("An injured person is entitled to one full compensation
for his injuries, and a double recovery for the same
injury is against public policy." (citation omitted)). To
prevent double recovery by plaintiffs, defendants are
entitled to a reduction in damages—sometimes called a
"setoff"—to offset any amounts that the plaintiff already
has collected from other sources in compensation for
the same injury. *See id.*

The parties do not dispute this basic principle, but they
disagree over its application to this case. Agency submits
that the rule against double recovery does not apply here
because its recovery from Martin Boyer compensated it
for "injuries of a different nature than those Agency
incurred as a result of Pacific's conduct." Appellant's
Br. 17. Pacific, on the other hand, contends that the

Martin Boyer recovery includes compensation for the same injury for which Agency seeks to recover in this action.

The determination of whether two awards compensate the same injury "is a matter within the sound discretion of the trial court." *Thornton*, 888 N.E.2d at 1223. The district court concluded that the Martin Boyer judgment compensated Agency for the same injury it alleged in its action against Pacific. *See Ill. Sch. Dist. Agency v. Pac. Ins. Co., Ltd.*, No. 02-3173, 2008 WL 474359, at \*2 (C.D. Ill. Feb. 19, 2008). We cannot conclude that the district court abused its discretion in reaching this conclusion; in fact, Agency concedes in its reply brief that it sought compensation from Martin Boyer for "fees and costs to defend *the East Moline Action*." Reply Br. 2. These are the same fees and costs it seeks to collect from Pacific in this action. Agency points out that it also advanced several other claims against Martin Boyer, and that "because the jury's verdict in the Martin Boyer Action was a general verdict[,] there is no way to determine how much of the $564,000 awarded to Agency the jury intended to compensate Agency for any one of the four categories of damages Agency alleged." *Id.* at 3. This situation does not preclude application of the rule against double recovery, however; it simply means that, on remand, the district court will have to make a finding as to how much of the $564,000 award should be attributed to Agency's costs in defending the relevant claims in the East Moline action. At that time, Agency will be able to present evidence to support its argument that some or all of that judgment

should be apportioned to its other claims against Martin Boyer.[1]

Agency also takes issue with the district court's refusal, in applying the setoff, to take into account the costs and attorney's fees that Agency incurred in prosecuting its action against Martin Boyer. In its view, any double recovery should not be measured by its gross recovery from Martin Boyer but rather by its net recovery after subtracting its costs and attorney's fees in that action. The district court rejected Agency's argument and declined to subtract Agency's fees and costs from its recovery. The court noted that "[n]o contractual provision and no statute authorized the Agency to recover its attorney fees from Pacific for bringing an action against Martin Boyer." *Ill. Sch. Dist. Agency*, 2008 WL 474359, at *2. Thus, the court concluded that, "[u]nder Illinois law, the Agency is responsible for the costs that it incurred in the two lawsuits." *Id.* The court also based its decision on the fact that Agency had consented to summary judgment

---

[1] Agency contends that the burden should fall on Pacific "to establish that Agency is attempting to recover more than one recovery for the specific losses it has alleged against Pacific." Reply Br. 3. The Supreme Court of Illinois has held, however, "that where a plaintiff recovers for several injuries in a previous lawsuit and fails to apportion damages accordingly," the burden shifts to the plaintiff to prove that some or all of the earlier judgment is not subject to setoff. *Pasquale v. Speed Prods. Eng'g*, 654 N.E.2d 1365, 1382 (Ill. 1995) (citing *Patton v. Carbondale Clinic, S.C.*, 641 N.E.2d 427, 433 (Ill. 1994)).

on its earlier claim against Pacific for costs and fees incurred in the prosecution of the Martin Boyer suit. Having already made that concession, the court held, "Agency cannot now attempt to impose those costs on Pacific." *Id.* at 4.

Agency submits that the district court erred when it failed to take its costs and attorney's fees into account when considering whether a judgment against Pacific would result in a double recovery. We agree.

Although there is very little case law directly on point, we believe that the principles underlying the law of remedies militate in favor of Agency's position. "The purpose of compensatory damages is to make the plaintiff whole." *Douglass v. Hustler Magazine, Inc.*, 769 F.2d 1128, 1146 (7th Cir. 1985). The law aims to put an injured plaintiff in the same financial position that it would have been in if the defendant had not breached its duty. In this case, Pacific had a duty to cover Agency's costs in defending the suit filed against it by East Moline. If Pacific had performed that duty, then Agency's successful defense of that suit would have resulted in no out-of-pocket cost to Agency in defending against East Moline's section 155 and equitable estoppel claims. Agency will be made whole for Pacific's breach, then, when it is compensated fully for its expenditures in defending those claims. In short, at the end of the day, Agency will be made whole when its resources are the same as they would have been if Pacific had not breached.

If Agency had never sued Martin Boyer, the extent of Pacific's liability would have been clear: Pacific would

have been liable for every penny that Agency spent defending against the covered claims in the East Moline suit. The same would have been true if Agency had sued Martin Boyer and lost. The make-whole principle and the rule against double recovery both focus on the *plaintiff's* position, not the defendant's. From Agency's perspective, the funds it recovered from Martin Boyer offset the losses it suffered in defending the East Moline suit only to the extent that those funds exceed the cost of obtaining the recovery.

Although, as we noted earlier, there is little case law directly on point, the United States District Court for the Northern District of Illinois has reached the same conclusion in an analogous case. In *Matsushita Electric Corp. of America v. The Home Indemnity Co.*, 907 F. Supp. 1193 (N.D. Ill. 1995), plaintiff Matsushita brought an action against Home, its insurance carrier, alleging that Home had breached an insurance contract by failing to pay for Matsushita's defense in a personal injury suit. Matsushita won on the merits and was awarded money damages against Home. Home sought a reduction in damages for amounts that had been paid toward the defense by other insurers with which Matsushita also had policies. One of those policies, which was issued by a company called Tokio Marine, had an unusual premium structure whereby Matsushita was not required to pay the premium until the end of the policy term, and the amount of the premium was determined in part by the dollar amount of any claims that Tokio Marine had paid out over the course of the policy term. Home's refusal to pay prompted Matsushita to file larger claim

against the Tokio Marine policy than it otherwise would have, which had the effect of increasing the policy premium that Matsushita later was required to pay. The court held that for purposes of determining an offset in the judgment against Home, the increase in the Tokio Marine policy premium should be subtracted from the amount Matsushita received from Tokio Marine. Home was entitled to an offset for the *net* amount that Matsushita collected from Tokio Marine, not the gross amount. Otherwise, the court recognized, Matsushita would not be made whole, because the increase in the premium was a cost to Matsushita that was caused by Home's breach of contract.

The district court in this case distinguished *Matsushita* by noting that Home's breach resulted in a larger portion of the litigation expenses being paid by Tokio Marine, which in turn increased the retrospective premium that Matsushita was required to pay on the Tokio Marine policy. The court concluded that this fact made *Matsushita* inapposite because Pacific's breach in this case "did not increase the Agency's contractual obligations to any other party." *Ill. Sch. Dist. Agency,* 2008 WL 474359, at *3. We cannot accept this distinction. Although the increase in defense payments from Tokio Marine increased Matsushita's premiums, nothing in the *Matsushita* opinion indicates that Matsushita was contractually required to ask Tokio Marine for an increase in defense payments. Matsushita presumably could have avoided the additional premiums by paying some of its own litigation costs; instead, it chose to exercise its right to file a larger claim with Tokio Marine, as it was

legally entitled to do. Likewise, Agency could have avoided attorney's fees and costs by forgoing its right to sue Martin Boyer; instead, it chose to pursue that action, as it had the legal right to do. The relevant issue in *Matsushita*, as in this case, was not whether the plaintiff could have avoided incurring costs in its protection of its rights; rather, the issue was what effect those costs had on the plaintiff's net recovery from sources other than the defendant.

We also cannot accept the district court's other reasons for declining to deduct Agency's fees and costs from the Martin Boyer recovery. The court was certainly correct in observing that Illinois law does not authorize Agency to collect its costs and fees in the Martin Boyer action from Pacific. Indeed, Agency concedes this point, which is why it agreed to summary judgment on its claim against Pacific for those costs. That concession is not, however, relevant to the question presented here. The district court had to decide simply whether reducing Pacific's liability by Agency's net recovery in *Martin Boyer*, rather than the gross, violated the rule against double recovery by putting Agency in a better position than it would have been in if Pacific had not breached the insurance contract. The answer to that question is no. The focus of the district court should have been on what part of the Martin Boyer recovery was fairly attributable to the same damage it now seeks to recover from Pacific.

Our approach to the rule against double recovery works no injustice to Pacific. Agency had no obligation to

sue Martin Boyer. If Agency had not done so—or if it had done so and lost—then Pacific unquestionably would have had to bear the full cost of its contractual breach. Agency's pursuit of Martin Boyer, therefore, could only *benefit* Pacific. If Agency pursued Martin Boyer and lost, Agency would bear the costs of that suit entirely on its own; it would have no recourse against Pacific for those costs. If Agency won—as it did—then Pacific's liability for its own breach of contract potentially would be reduced under the rule against double recovery. Under no circumstances would Agency's decision to sue Martin Boyer cause any harm to Pacific. Consequently, the district court's approach actually might redound to the detriment of defendants in Pacific's position because it would provide a powerful disincentive to plaintiffs to explore additional avenues of recovery.[2]

Accordingly, we conclude that the district court's grant of summary judgment to Pacific must be vacated, and the case remanded to the district court for a new determination of damages on the estoppel claim. First, the court should make a finding as to the amount of damages

---

[2] Nor does this approach run afoul of the "American rule," which provides that a prevailing party generally cannot recover its attorney's fees from the losing party. That rule is not implicated here, because Agency is not asking Pacific to pay its attorney's fees, either in this action or in the Martin Boyer action. Rather, Agency simply asserts that its costs and fees in the Martin Boyer suit should be taken into account in the calculation of how much it actually recovered in that suit. For the reasons just discussed, we agree.

Agency suffered as a result of Pacific's refusal to pay for Agency's defense of that claim. Then, the court should determine whether, and to what extent, Pacific's *net* recovery from Martin Boyer already has compensated Agency for those damages.[3,4]

## B. The Section 155 Claim

Agency also submits that the district court should not have granted Pacific's Rule 60 motion to "correct" its April 10, 2008 order by issuing a new order that omitted the $98,638.66 judgment in Agency's favor on the Section 155 claim. We agree with Agency that the district court should not have vacated that award.

Pacific submitted in its Rule 60 motion that our decision on Agency's first appeal "vacated/superceded" the Section 155 judgment. We cannot accept that submission. Our decision in the first appeal did not upset that judg-

---

[3] Agency claims that its costs and fees in the Martin Boyer action actually exceeded the $564,000 it recovered, and that, therefore, there is no net recovery to be applied as an offset in this case. This is a question of fact, however, and should be addressed in the first instance by the district court on remand.

[4] As we have mentioned above, this last step will require the district court to make a finding as to how much of the Martin Boyer verdict is attributable to the injury at issue in this case, and how much is attributable to the other claims that Pacific asserted against Martin Boyer. *See supra* note 1 and accompanying text.

ment; indeed, Pacific did not file an appeal or cross-appeal challenging it. As far back as *Morley Co. v. Maryland Casualty Co.*, 300 U.S. 185, 191 (1937), the Supreme Court has made it clear that an appellee who has not filed a cross-appeal may only defend the judgment being challenged by the appellant. The appellee may not, in the absence of a cross-appeal, "attack the decree with a view either to enlarging his own rights thereunder or of lessening the rights of his adversary, whether what he seeks is to correct an error or to supplement the decree with respect to a matter not dealt with below." *Id.* (citation omitted). Neither party challenged the district court's entry of judgment in Agency's favor on the Section 155 claim; hence, Pacific could not enlarge its own rights or lessen Pacific's rights as to that judgment. Our opinion in the first appeal recognized this limitation, and we stated explicitly that our decision on that appeal did not upset the Section 155 judgment: "Because Pacific has not filed a cross-appeal, the judgment against it and in favor of Agency on the [Section 155] bad faith claim cannot be reduced due to the Supreme Court's admonition in *Morley*." *Ill. Sch. Dist. Agency*, 471 F.3d at 723.

Thus, the district court erred in failing to include the $98,638.66 award to Agency in its final judgment in this case. On remand, the district court must reinstate this award. The court then may consider a motion by Pacific, if it chooses to make one, to modify this damage award to avoid double recovery in light of the Martin Boyer judgment. As we already have explained, any reduction in the award should take into account only Agency's *net* recovery in the Martin Boyer action.

## Conclusion

For the reasons set forth above, we reverse the judgment of the district court and remand the case for further proceedings consistent with this opinion.

REVERSED AND REMANDED WITH INSTRUCTIONS