In the

# United States Court of Appeals

## For the Seventh Circuit

No. 18-2535

CHRISTIAN K. NARKIEWICZ-LAINE,

*Plaintiff-Appellant,*

*v.*

KEVIN C. DOYLE, *et al.,*

*Defendants-Appellees.*

Appeal from the United States District Court for the
Northern District of Illinois, Eastern Division.
No. 1:11-cv-1826 — **Frederick J. Kapala**, *Judge.*

ARGUED APRIL 5, 2019 — DECIDED JULY 19, 2019

Before FLAUM, KANNE, and SCUDDER, *Circuit Judges.*

SCUDDER, *Circuit Judge.* This case arose from the destruction of personal property and artwork belonging to Christian Narkiewicz-Laine, an artist. Narkiewicz-Laine stored his artwork and other belongings in a space in Galena, Illinois that he rented from the defendants. Years into the lease, the defendants emptied the unit, destroying the majority of Narkiewicz-Laine's property. He responded by suing to recover for the loss of his property. After a six-day trial, the jury awarded

him damages on multiple claims. Unsatisfied with his damages award, Narkiewicz-Laine now appeals, challenging a number of the district court's rulings made along the way. We affirm.

**I**

The lease between Narkiewicz-Laine and the defendants, members of the Doyle family and affiliated entities, began in 2004. About six years later, the defendants cleared the rental space and discarded the majority of his property, including the only records he had listing the property stored in the unit. Narkiewicz-Laine then brought this suit, pursuing claims under an amendment to the Copyright Act known as the Visual Artists Rights Act of 1990, 17 U.S.C. § 106A, to recover for the destruction of his artwork. For certain types of visual art, the Act confers upon artists rights to attribution and integrity—including, for particular qualifying works, the right to prevent the work's destruction. See *Kelley v. Chicago Park Dist.*, 635 F.3d 290, 296 (7th Cir. 2011).

Narkiewicz-Laine added common law claims for trespass, conversion, and negligence under Illinois law. He based these latter claims on a broader theory of recovery that would allow him to obtain damages for all of his lost property—the entirety of his destroyed artwork and other items of personal property.

The case proceeded to trial. Narkiewicz-Laine testified on the central issue of what property and art had been stored in the rental unit. He did so by introducing a list of all the artwork and personal property, explaining that he prepared the inventory after learning of the destruction by checking his personal records, contacting institutions where his work had

been exhibited, and attempting to obtain photographs of his work from friends. The inventory listed 1,457 pieces of Narkiewicz-Laine's own artwork, items of personal property, and artwork created by others that he had stored in the rental unit. He asked the jury to award him $11 million for his losses.

For their part, the defendants presented evidence that Narkiewicz-Laine had missed multiple rent payments and long since stopped paying for the utilities for the property. The defendants also underscored that, prior to emptying the space, they saw nothing resembling art or valuable personal property in the rental unit. The defendants took the position that they disposed of junk, not art.

In the course of the trial, the defendants impeached Narkiewicz-Laine with a prior conviction for lying to an FBI agent. Prior to trial, the district court had denied Narkiewicz-Laine's motion to exclude evidence of the conviction, which was over ten years old.

The jury returned a verdict in Narkiewicz-Laine's favor. It found that the defendants had destroyed four pieces of artwork protected under the Visual Artists Rights Act and awarded $120,000 in damages. But the jury did not award him damages on the remainder of the works for which he had claimed damages under the Act—some 1,453 other pieces of artwork. As for the common law claims, the jury decided in Narkiewicz-Laine's favor and awarded $300,000, reflecting the loss of all the artwork and other belongings stored at the unit.

Following the trial, the district court reduced Narkiewicz-Laine's total damages award from $420,000 to $300,000 to avoid what it saw as an improper double recovery. It

determined that the jury's award on the common law claims needed to be reduced by the amount he recovered for the destruction of his works protected under the Visual Artists Rights Act, as some of the damages were duplicative. Even more specifically, the court reasoned that the award for Narkiewicz-Laine's common law claims—which compensated him for the loss of all property and artwork that had been destroyed—necessarily included the loss caused by the destruction of the subset of his artwork protected under the Visual Artists Rights Act.

Next, the district court concluded that Narkiewicz-Laine was not entitled to attorneys' fees under the Copyright Act. The court reasoned that, while he had won a damages award covering some of the works, he also lost the majority of the claims he brought under the Visual Artists Rights Act—his claims covered 1,457 protected works, but he prevailed only as to four of those works. In the court's view, then, there was no clear prevailing party and Narkiewicz-Laine was not entitled to attorneys' fees.

## II

On appeal Narkiewicz-Laine seeks a new trial on his claims under the Visual Artists Rights Act and a reversal of the district court's post-trial rulings reducing his damages award from $420,000 to $300,000 and denying his application for attorneys' fees.

## A

We begin with Narkiewicz-Laine's argument that he is entitled to a new trial because the district court never should have allowed the defense to impeach him with his 2003 conviction for making false statements to an FBI agent—a

conviction well over ten years old at the time of the trial. Narkiewicz-Laine likewise takes issue with the scope of cross-examination that the district court allowed at trial regarding the conviction. On that score, he asserts that the district court improperly allowed the defendants to cross-examine him with the plea agreement from his 2003 conviction to elicit information about other charges of which he was never convicted. He further contends that the district court erred in allowing the defendants to impeach his expert witness by asking a question that improperly characterized Narkiewicz-Laine as an "art felon."

Our review of the district court's decision to admit Narkiewicz-Laine's prior conviction as well as its other evidentiary rulings related to the use of the conviction at trial is limited. We ask only whether those rulings reflected an abuse of discretion. See *Barber v. City of Chicago*, 725 F.3d 702, 707 (7th Cir. 2013). Even then, we will not reverse if the error was harmless. See *Whitehead v. Bond*, 680 F.3d 919, 930 (7th Cir. 2012). Rather, reversal is required if the evidentiary error "had 'a substantial and injurious effect or influence on the jury's verdict.'" *United States v. Redditt*, 381 F.3d 597, 601 (7th Cir. 2004) (quoting *United States v. Woods*, 301 F.3d 556, 562 (7th Cir. 2002)). Evidentiary errors meet this standard "only when a significant chance exists that they affected the outcome of the trial." *Whitehead*, 680 F.3d at 930.

Federal Rule of Evidence 609 supplies the controlling analytical framework. Rule 609(a)(2) allows into evidence—for purposes of impeachment—a witness's prior conviction for a crime involving dishonesty. But the Rule sets up different presumptions for convictions more than ten years old, like Narkiewicz-Laine's here. Evidence of such a conviction is

admissible only if "its probative value, supported by specific facts and circumstances, substantially outweighs its prejudicial effect." Fed. R. Evid. 609(b)(1).

In this way, Rule 609 tilts the analysis in favor of excluding evidence of convictions over ten years old. Such convictions, we have emphasized, should be admitted "only in rare and exceptional circumstances." *United States v. Rogers*, 542 F.3d 197, 201 (7th Cir. 2008). But so too is it true that there exists no absolute bar to admitting a conviction over ten years old, and we will uphold the district court's decision doing so "as long as the record shows that the district court thoughtfully analyzed the facts and properly weighed the probative value of the evidence against its prejudicial effect." *Redditt*, 381 F.3d at 601.

The district court's decision to allow Narkiewicz-Laine's 2003 conviction respected these principles. The court rested its ruling on a thoughtful analysis balancing the probative value of the evidence of the conviction against the prejudicial effect of admitting it. See *United States v. Montgomery*, 390 F.3d 1013, 1015 (7th Cir. 2004) (articulating the factors to be considered in determining whether the probative value of a conviction outweighs its prejudicial effect). Recognizing the probative value of the conviction to Narkiewicz-Laine's credibility, the district judge took care to consider the importance of his testimony to his case and the low risk that the jury would improperly hold the conviction against him.

Recall that with the emptying of the rental unit went all documentation of what existed in the space. Narkiewicz-Laine attempted to recreate such an inventory after the fact, and testified to his compilation at trial. His testimony, then, served as the evidence establishing the existence of many of

the items for which he claimed damages. As the district court saw it, this made Narkiewicz-Laine's testimony and credibility pivotal to his case, weighing in favor of admitting the 2003 conviction. Further, the district court saw the fact that the conviction implicated Narkiewicz-Laine's truthfulness—because it involved making false statements—as adding to its impeachment value. The district court also noted that the 2003 conviction had little similarity to Narkiewicz-Laine's current claims, a reality that lowered the risk of the jury using the evidence for something other than impeachment.

Narkiewicz-Laine argues that the district court compounded the error of admitting his 2003 conviction by allowing the defendants too much latitude in their use of the conviction on cross-examination. To be sure, these observations are not without weight. But, in the end, we need not determine whether these evidentiary rulings amounted to an abuse of discretion, because even assuming that the district court erred, any impact was harmless. Viewing the trial evidence as a whole, we fail to see how the admission and use of the 2003 conviction at trial adversely skewed the jury's verdict. This is especially so because the court instructed the jury that it could consider the evidence of Narkiewicz-Laine's 2003 conviction only for the limited purpose of determining whether his testimony was truthful. See *Rogers*, 542 F.3d at 201 (explaining that "where a limiting instruction is given … the error usually will be harmless").

And more significantly, it is far from clear that the admission of the 2003 conviction—and related testimony elicited on cross-examination—had any effect whatsoever on the jury's verdict. Remember that Narkiewicz-Laine won part of the trial: the jury awarded him damages for some of the claimed

artwork and personal property. To do so, the jury had to have credited at least some of Narkiewicz-Laine's testimony and, in the process, rejected the defendants' position that the destroyed property was all scrap without any significant value. Narkiewicz-Laine presents no persuasive explanation as to why the use of his conviction at trial might have influenced the jury's decision regarding some of his claimed losses but not others. It is equally telling that he seeks a new trial only as to his claims under the Visual Artists Rights Act. In charting this course, Narkiewicz-Laine seems to accept that the use of his 2003 conviction did not affect the jury's consideration of his common law claims, even though those claims also depended heavily on his testimony and the jury's assessment of his credibility.

None of Narkiewicz-Laine's evidentiary challenges clears the reversible error hurdle because we cannot conclude that the admission and use of his prior conviction at trial had a substantial or injurious effect—or indeed, any discernible effect at all—on the jury's verdict.

## B

That brings us to Narkiewicz-Laine's argument that the district court abused its discretion in reducing the jury award. Here, too, we disagree.

The jury returned a verdict for Narkiewicz-Laine on his claims under the Visual Artists Rights Act and determined two damage amounts: $120,000 in actual damages or, in the alternative, $120,000 in statutory damages. The jury also found in his favor on his common law claims of trespass, conversion, and negligence and awarded him $300,000 for the loss of all of his property discarded from the rental unit. To

preclude what it saw as a double recovery, the district court reduced the jury's award for the common law claims ($300,000) by the actual loss he sustained for the works protected under the Visual Artists Rights Act ($120,000). Narkiewicz-Laine was instead compensated for the loss of these works by the jury's award of statutory damages under the Act ($120,000). This left him with a total award of $300,000.

Narkiewicz-Laine brought his common law claims under Illinois law, so we begin there. Under Illinois law, "an injured plaintiff may receive only one full compensation for his or her injuries." *Illinois Sch. Dist. Agency v. Pac. Ins. Co.*, 571 F.3d 611, 615 (7th Cir. 2009) (quoting *Thornton v. Garcini*, 382 Ill. App. 3d 813, 820 (2008)). To prevent a double recovery, a damage award must be reduced "to offset any amounts that the plaintiff already has collected from other sources in compensation for the same injury." *Id.* at 615–16.

To assess whether the jury's award would have afforded Narkiewicz-Laine a double recovery, we must turn to § 504 of the Copyright Act, the provision authorizing the recovery of damages on his Visual Artists Rights Act claims. Under § 504, a plaintiff may elect to recover either actual damages or statutory damages but not both. See 17 U.S.C. § 504(c)(1). A plaintiff electing statutory damages must make that choice "at any time before final judgment is rendered" and may recover a set range—between $750 and $30,000—for each work. *Id.* Here, Narkiewicz-Laine elected to receive statutory damages. That choice meant he could not recover actual damages for the same works.

What complicates our discussion here is the jury's identical calculation of actual and statutory damages under the Visual Artists Rights Act: $120,000 for each. That makes it

tempting to view the awards as interchangeable. But statutory damages and actual damages are distinct under the Copyright Act: statutory damages compensate for harms different from actual loss. See *Bucklew v. Hawkins, Ash, Baptie & Co., LLP.*, 329 F.3d 923, 931 (7th Cir. 2003) (explaining that § 504 "authorize[s] statutory damages unrelated to losses or gains"). And in the context of the Visual Artists Rights Act specifically, decoupling statutory damages from actual losses accords with the statute's purpose to protect the "moral rights" of artists—rights "unrelated to the artist's pecuniary interests" and instead "grounded in philosophical ideas about the intrinsic nature and cultural value of art rather than natural-property or utility justifications." *Kelley*, 635 F.3d at 296.

Relying on Congress's desire to protect the moral rights of artists, Narkiewicz-Laine argues he is entitled to both the $120,000 in statutory damages under the Act and the $300,000 in actual damages on his common law claims. To his mind, this does not amount to a double recovery because the $120,000 he was awarded in statutory damages addressed his moral rights, while the $300,000 in actual damages compensated him for his property rights.

Couched this way, Narkiewicz-Laine's position has surface appeal. A closer look shows that the analysis misses the mark, though. The biggest problem for Narkiewicz-Laine is that § 504 of the Copyright Act precludes him from recovering for both actual and statutory damages for the same works, and under his theory, that is exactly what he would be allowed to do. The jury's verdict and the related instructions bear this out.

The jury instructions made clear that both actual damages under the Visual Artists Rights Act and damages for Narkiewicz-Laine's common law claims would compensate him for the same type of loss. We have no doubt on this point because the district court instructed the jury to assess actual damages under the Act and damages on the common law claims with the same measuring stick: the "fair market value" of the destroyed property. The court further explained that the damages for the common law claims would compensate Narkiewicz-Laine for the value of *all* his property. This necessarily included any works the jury found to be protected under the Visual Artists Rights Act.

The instructions did not direct the jury to exclude the loss caused by the destruction of Narkiewicz-Laine's works protected under the Act from its calculation of damages on his common law claims. This had a clear consequence: the $300,000 awarded on the common law claims—for all property lost—necessarily included the subset of works that were specifically covered under the jury's verdict on the Visual Artists Rights Act claims. And even though Narkiewicz-Laine elected to receive statutory damages, we cannot ignore the jury's express finding that the fair value of his loss on the four works covered by the Visual Artists Rights Act amounted to $120,000. Because Narkiewicz-Laine is not entitled to recover twice for the same property, the actual damages attributed to those four works must be subtracted out of the jury's award of actual damages for all destroyed property.

Perhaps this conclusion is easier illustrated this way:

| | |
|---|---:|
| Jury award on common law claims for all losses | $300,000 |
| Portion of that award covering the four works protected by the Visual Artists Rights Act | -$120,000 |
| Net common law award | $180,000 |
| Jury award of statutory damages for the four Visual Artists Rights Act works | +$120,000 |
| **Adjusted total award** | **$300,000** |

Skipping the subtraction step would allow Narkiewicz-Laine to recover twice for his loss of the same artwork covered by both the jury's award on his common law claims and the separate award on his claims under the Visual Artists Rights Act. On this record, the district court did not abuse its discretion in reducing the damages on the common law claims.

The trial record affords a different, alternative path to the same conclusion. During the jury instruction conference, Narkiewicz-Laine's counsel assured the defendants and the judge that his client was not seeking to recover under both the common law and the Visual Artists Rights Act for the same losses. In no uncertain terms, he explained that Narkiewicz-Laine was not taking the position that "a VARA work could recover both under VARA and under the common law." The court and the defendants accepted these assurances at face value. Indeed, the defendants had originally proposed a verdict form for the common law claims that would have

instructed the jury to exclude any award for property that was included in the damage award under the Visual Artists Rights Act claims. After receiving these assurances, the defendants agreed to withdraw their form, and the resulting jury verdict form did not instruct the jury to exclude damages for the Visual Artists Rights Act artwork from its calculation of damages on Narkiewicz-Laine's common law claims.

In a similar vein, during closing argument, Narkiewicz-Laine's counsel asked the jury to include works protected under the Visual Artists Rights Act in its calculation of actual damages for the common law claims. He went so far as to assure the jury that, even though these works would be included in the calculation of damages for the common law claims, "nobody is trying to get paid twice." Cementing the point, counsel then explained that, if the jury awarded actual damages for the Visual Artists Rights Act works and actual damages for the common law claims, then the actual damages for the Visual Artists Rights Act works would be subtracted from the damage award for the common law claims, stating "[t]he Judge will do this."

On this record, Narkiewicz-Laine cannot be allowed an unjust about-face on appeal: he is urging us to reverse for the very reason he expressly disavowed at trial. See *New Hampshire v. Maine*, 532 U.S. 742, 749 (2001) (quoting *Davis v. Wakelee*, 156 U.S. 680, 689 (1895)) ("[W]here a party assumes a certain position in a legal proceeding, and succeeds in maintaining that position, he may not thereafter, simply because his interests have changed, assume a contrary position, especially if it be to the prejudice of the party who has acquiesced in the position formerly taken by him."). Recognizing that Narkiewicz-Laine was attempting to assume a contrary position to

the detriment of the defendants, the district court got it right in reducing Narkiewicz-Laine's award from \$420,000 to \$300,000.

C

We owe a final word to the district court's decision not to award Narkiewicz-Laine attorneys' fees. The Copyright Act— of which the Visual Artists Rights Act is part—provides that "in its discretion," a district court may award costs, including attorneys' fees to the "prevailing party." 17 U.S.C. § 505. Under this section, "[p]revailing plaintiffs and prevailing defendants are to be treated alike, but attorney's fees are to be awarded to prevailing parties only as a matter of the court's discretion." *Fogerty v. Fantasy, Inc.*, 510 U.S. 517, 534 (1994).

Narkiewicz-Laine contends he is presumptively entitled to attorneys' fees as the prevailing party. See *Riviera Distributors, Inc. v. Jones*, 517 F.3d 926, 928 (7th Cir. 2008) (explaining that a prevailing party in copyright litigation is "presumptively entitled to reimbursement of its attorneys' fees"). But his argument misaligns with what happened here by assuming that he prevailed across the board at trial. Not so.

True enough, the district court entered judgment in the amount of \$120,000 for Narkiewicz-Laine on his Visual Artists Rights Act claims. And Narkiewicz-Laine is correct to observe that a litigant is deemed to have prevailed when he obtains a "material alteration of the legal relationship of the parties"— in other words, a judgment in his favor. *Id.* (quoting *Buckhannon Bd. & Care Home, Inc. v. W. Virginia Dep't of Health & Human Res.*, 532 U.S. 598, 604 (2001)). But it is also true that— though embodied in only one count in his complaint— Narkiewicz-Laine asserted multiple claims under the Visual

Artists Rights Act covering 1,457 independent pieces of art-
work and seeking damages far beyond what he actually re-
covered. The jury found for Narkiewicz-Laine on only four of
those claims. The flipside is that the jury necessarily found for
the defendants on the remaining claims under the Visual Art-
ists Rights Act—indeed, on the vast majority of those claims.

As the district court explained, that Narkiewicz-Laine
"chose to plead all of his VARA claims in one count should
not dictate who is determined to be the prevailing party."
And, unlike in the context of civil rights suits in which a plain-
tiff need not prevail on every claim to be considered the pre-
vailing party, plaintiffs and defendants are on equal footing
for the purposes of fee awards under § 505. See *Fogerty*, 510
U.S. at 524 (explaining that, in the civil rights context, Con-
gress sought to redress an imbalance between plaintiffs and
defendants "by treating successful plaintiffs more favorably
than successful defendants in terms of the award of attorney's
fees," but that no such objective existed for awarding fees un-
der the Copyright Act). Where, as here, the jury's verdict
points in two directions as to who prevailed, the district court
was well within its discretion in declining to grant Narkie-
wicz-Laine fees.

The same reasoning leads us to reject the defendants' ar-
gument that they should be awarded their costs and fees of
defending this appeal. While it is true that when a party "wins
a suit and is entitled by statute to a reasonable attorneys' fee,
the entitlement extends to the fee he reasonably incurs in de-
fending the award of that fee," *JCW Investments, Inc. v. Nov-
elty, Inc.*, 509 F.3d 339, 342 (7th Cir. 2007) (quoting *Gorenstein
Enterprises, Inc. v. Quality Care-USA, Inc.*, 874 F.2d 431, 438 (7th
Cir. 1989)), that is not the scenario before us. The district court

did not declare either side a prevailing party; nor does the defendants' victory on appeal transform them into one. The defendants are thus not entitled to an award of attorneys' fees for their costs in litigating this appeal.

Accordingly, we AFFIRM.